Pauline Etzkorn, Appellee, v. City of Oelwein, Appellant.

**Personal injury:** EVIDENCE: PAIN AND SUFFERING. In an action for injuries by a pregnant woman who claimed that her unborn child was forced into an unnatural position by her fall, whereby she was caused pain and suffering at its birth, admission of her testimony that she had previously given birth to children who were in a normal position, and without suffering pain, was prejudicial, as there was no logical connection between these facts.

**Same:** EXAMINATION OF INJURY. The plaintiff in a personal injury action should not be permitted to describe the pain suffered while undergoing an examination of the injury by physicians under an order of court, nor of the subsequent physical effect of the examination.

**Evidence:** PAIN AND SUFFERING. Declarations of past pain, or reasons for a particular course of action, or the conclusions of another for certain conduct by the injured party, are not admissible in a personal injury action in proof of present pain and suffering.

**Evidence:** MEDICAL WORKS. Medical works are not admissible in evidence; and the error in permitting the same to be read to a jury is not cured by afterwards sustaining an objection to a question asking the witness if he had ever read the same.

**Pain and Suffering:** INSTRUCTIONS. Where the plaintiff in a personal injury action is claiming increased pain and suffering in subsequent childbirth because of her injury, the jury should be clearly instructed that recovery should be allowed only for such pain and suffering as was shown by a preponderance of the evidence to have resulted from the injury.

**New Trial:** NEWLY DISCOVERED EVIDENCE: EXCESSIVE VERDICT. The timely discovery of new and material evidence, and an excessive verdict apparently due to the admission of incompetent evidence, are grounds for a new trial.

*Appeal from Superior Court of Oelwein.*—Hon. M. D. Porter, Judge.

Thursday, April 8, 1909.

Action at law to recover damages for injuries received by plaintiff while passing over and along a sidewalk in the defendant' city. There was a trial to a jury, resulting in a verdict and judgment for plaintiff in the sum of $6,000, and defendant appeals.—*Reversed.*

*J. R. Bane* and *Clements & Estey,* for appellant.

*John Jamison* and *Rickel, Crocker & Tourtellot,* for appellee.

Deemer, J.—In the city of Oelwein there is a public street known as Jefferson running east and west, upon the north side of which there was a board sidewalk extending from what was known as the St. Mary's Episcopal Church lot westward about one hundred feet to where it crossed the railway right of way in said town. It is claimed in the petition that defendant for a long time prior to April 15, 1907, suffered and permitted this sidewalk, especially at a point about five or six feet west of the southeast corner of lot 1, block 7, in said city, being at a place about thirteen feet from the southeast corner of St. Mary's Church, to be and become out of repair, unsafe and dangerous, in that two of the planks which were of insufficient width and not laid close enough together, and to which others were not laid sufficiently close, became and were unfastened and loose from the sills or stringers to which nailed, the nails fastening the same to said sills or stringers, having become rusted, broken and loose, leaving said two planks lying loose and unfastened upon the sills or stringers and far apart from the next nearest planks, and liable to be displaced and tilted and trip pedestrians when passing over said sidewalk, and leaving a dangerous trap and hole or opening about nine inches in depth into which such pedestrians were also liable to step or fall, or

cause to be tripped, step or fall by said planks being so displaced and loose.   Plaintiff also claimed that while passing over this walk in company with her sister on the 15th day of April she was tripped by said loose boards, thrown forward and down upon the walk, causing her right limb to be severely wrenched, bruised and impaired, and displacing an unborn child which she was then carrying from its natural position, causing delayed, prolonged, and more difficult labor and greatly injuring and impairing her health; and she asked damages in the sum of $5,000. In a second count to her petition she pleaded an assignment of her husband's claim for damages growing out of the same transaction, and asked additional damages in the sum of $5,000.   Defendant's answer was in effect a general denial.   The verdict was for $6,000, and the appeal presents many questions for review.

Something like forty-four errors are assigned, and it is manifest that we can not consider all of them and confine this opinion within proper limits.   The walk in question was properly constructed in the year 1898, the material used being 2x6 plank and 4x4 stringers; but it is contended that it became and was out of repair for some time before plaintiff received her injuries.   She said that while passing along the walk in company with her sister, going in an easterly direction, and at a point about six feet from the end of the walk as it passed by the church lot, she tripped and fell by reason of two loose planks in the walk, which neither she nor her sister observed, resulting in the injuries complained of.   Defendant contends that there is not sufficient testimony upon which to base a verdict in any sum against it, in that there is no showing of any defect in the walk where plaintiff claims she fell, and no such notice to the defendant city of any such defect, if there was one, as to make it liable for damages. The testimony on this point was conflicting, and there was enough in plaintiff's favor to justify a finding that there

was such a defect, and that defendant was guilty of negligence in not discovering and remedying it before the accident occurred. Counsel complain of many of the rulings on the admission and rejection of testimony, of the instructions given, and of the refusal to give those asked by defendant, and of the ruling on the motion for a new trial based upon the excessiveness of the verdict, and the refusal to give a new trial because of newly discovered testimony.

It appears that plaintiff had been delivered of four other children prior to the time the one in question was born. She was asked as to how these other children were born, whether in a normal or abnormal position; and as to whether or not she suffered any pains or inconvenience from the birth of her other children. Objections to these questions were interposed by defendant's counsel, but they were overruled, and to the first question witness responded that they were born in a normal position, and to the second that she had not suffered pains. We are constrained to hold that these questions were improper, and the answers thereto decidedly prejudicial. We know of no authority which holds that because a woman is delivered of one or more children in a normal position that others are likely to and will be born in the same position. It is shown in the record before us, and it is well known, that unborn children assume various positions while in the mother's womb, changing their position from time to time, and that whenever there is no movement there is danger not only to the child but to the mother. Plaintiff claimed that by reason of the fall her unborn child was forced into a transverse and unnatural position, where it remained until birth, when it had to be changed by means of instruments and manipulations into a proper position for delivery. In order to demonstrate this, she was permitted to testify that her other children were born in a normal position. There is no logical connection between these

<span class="margin">1. PERSONAL INJURY: evidence: pain and suffering.</span>

facts. Moreover, her testimony that she suffered no pain when her prior children were born may be true, although contrary to all human experience; but, even if true, it has no tendency to show that the pain she suffered from the delivery of her last child was due to the injury she received when she fell upon the sidewalk. *Trapnell · v. Red Oak,* 76 Iowa, 744.

The last child was born June 4, 1907; it weighed, when delivered, eight pounds, and it was sound and healthy. The only legitimate inference to be derived from her testimony as to prior childbirths was that these deliveries did not rupture any of her organs, and that she had not suffered any lesions which were found after the birth of her last child. Direct testimony was admissible upon this point, and it is manifest that counsel in offering this testimony was not trying to prove her physical condition prior to the birth of her last child. His effort undoubtedly was to have the jury believe that, as she had not previously suffered from childbirth, her suffering which she described as accompanying the birth of her last child must have been due to the accident upon the walk. For reasons already suggested, we do not think this true, either as a logical or gynecological proposition. These rulings were repeated several times, and the same matters were shown by the husband's testimony over objection.

It seems that upon defendant's request the court appointed three physicians to examine plaintiff before the trial of the case. They made their examination, but were not offered as witnesses by either side. On plaintiff's cross-examination she was asked as to two or three statements which it is claimed she made to these doctors; one as to how she fell, and another as to the treatment given by ·the doctor who visited her on the day of her fall. On redirect examination the following questions were asked and answered, and a record made as shown:

2. SAME: examination of injury.

(1) Q. Were these three doctors examining you during all that time that they were at the house? A. At the house very near all the time. I don't quite remember how long the examination lasted.

(2) Q. They asked you a large number of questions while they were examining you internally, is that correct? A. Yes, sir.

(3) Q. What was your physical condition at the time this examination took place? How did you feel? A. Of course I felt terrible bad all over, terrible weak like; I didn't feel as though I could stand it any longer in the afternoon; then I had to go through it at night again after supper. I was sick for a whole week later from the effects of it.

To each of the last three questions defendant made the following objection:

Objected to as immaterial, irrelevant, incompetent, and for the reason that the law provides for an examination being made and the applications made to the court, and the order for an examination can not be inquired into in this manner and it is prejudicial. The objections were overruled by the court, to which ruling the defendant duly excepted, and to each of them.

We think the objections should have been sustained. The only effect of these answers was to charge defendant with damages because of the pain, suffering and inconvenience due to a proper examination made of plaintiff under an order of court. The verdict is a very large one, and just such things as this indicate the basis upon which it was arrived at.

The following is taken from the record to show the basis of another claim for error:

I heard her last night. We were up there, and Mrs. Etzkorn was upstairs with one of the children; one of them called for a cup of water. I took the cup of water upstairs. I know why she did not. Q. Why didn't she? (Objected to by the defendant as immaterial, irrelevant,

incompetent, and asking for an opinion and conclusion of the witness. Overruled. Defendant excepts.) A. Why, she says her limbs hurt her; her side hurt her, and she felt dizzy. (Defendant moves to strike out the answer as immaterial, irrelevant, incompetent and hearsay. Overruled. Defendant accepts.)

It is the rule of this court that declarations of present pain are admissible in such cases as this. *Keyes v. Cedar Falls,* 107 Iowa, 521; *Rupp v. Howard,* 114 Iowa, 66; *Patton v. Sanborn,* 133 Iowa, 653. Such

3. EVIDENCE: pain and suffering.

testimony, in order to be admissible, should be in the nature of involuntary declarations expressive of present pain and suffering. Statements of an injured party as to past pain, or of reasons given for a particular course of conduct, or deductions drawn by another as a reason for a given line of action by the injured party, should not be received unless part of the *res gestae,* for they are simply self-serving in character in the one instance or conclusions of the witness in the other. *Winter v. R. R.,* 74 Iowa, 448; *Hall v. R. R.,* 115 Iowa, 18. The witness was permitted by the trial court to give his conclusions as to the reasons why plaintiff did not take a cup of water upstairs to one of her children, and in that manner to get before the jury not her then present involuntary declarations of pain, but statements made by her as to her past or present condition. This, too, undoubtedly had its effect upon the jury in fixing the amount of plaintiff's recovery.

In examining one of the physicians called by plaintiff, her counsel read a long extract from a medical work, and asked if the witness had ever read it. After it was

4. EVIDENCE: medical works.

read, defendant's counsel objected, and the objection was sustained. The objectionable matter had been read to the jury, however, and could not well be eliminated by a ruling sustaining an objection to the question. That it is error to admit medi-

cal works, see *Bixby v. R. R.,* 105 Iowa, 293; *State v. Peterson,* 110 Iowa, 647, and cases cited.

None of the other rulings on evidence seem to have been prejudicial to the defendant.

II. The eleventh and thirteenth instructions, which we here copy, are criticised:

(11) If you find from a preponderance of the evidence the plaintiff was injured while using ordinary and reasonable care, and that such injury was caused by the negligence of the defendant, then it was the duty of the plaintiff and her husband to exercise reasonable care, prudence and diligence in the selection of a physician, and in the treatment and care of such injury so sustained by plaintiff, for the purpose of effecting recovery, and plaintiff would be entitled to recover only for direct and immediate consequences of injuries so received, if they had received such reasonable care and attention for the purpose of effecting a recovery. If you find from the evidence that any part of the pain and suffering, medical attention, or loss of time was occasioned by reason of the neglect of the plaintiff or her husband to use such reasonable care in the treatment and care of the injury, then and in that event plaintiff can not recover for such additional pain, suffering, and expense or loss of time, if any, caused by such neglect, and you should determine from the evidence what would be her damages, if any, that were the reasonable and probable consequence of the injury if properly treated and cared for. But her damages should not be diminished by the negligence (if any) of the physician, if reasonable care was used in his selection.

(13) If you find for the plaintiff you should allow to her such sum, not exceeding the amount claimed, as you find from the evidence will reasonably compensate her for the pain and suffering sustained by her to this time by reason of the personal injuries, if any, sustained as a result of her fall upon the sidewalk on Jefferson Street, and for the reasonable expense, if any, incurred by her husband for medical attendance and nursing, made necessary because of the injuries due to her fall, and for the pain and suffering, if any, it is reasonably certain from the evidence she will suffer in the future because of her

injuries so received; and you will also allow her such fur-
ther sum as will reasonably compensate her husband for
the loss of her services, society, and companionship, if any,
he has lost to this time, and such further sum as it is
reasonably certain from the evidence he will lose by reason
of the loss of her services, society and companionship in
the future because of the injuries sustained by her.

These instructions are not perhaps open to criticism
because of the abstract propositions presented, but because
of the nature of the injuries claimed to have been sus-
tained by plaintiff it was quite important
for the jury to be instructed that defendant
could not be held responsible for any pain,
suffering or injuries plaintiff sustained which were not
shown by a preponderance of the testimony to have re-
sulted in consequence of the fall. Plaintiff was bound to
suffer some pain and anguish and be confined to her room,
if not to her bed, for some time on account of childbirth.
The birth of this child was neither hastened nor retarded
by reason of the fall, and the services of a physician were
necessary in any event. The case, because of its peculiari-
ties, called for definite instructions upon these propositions.
We would not for this reason alone reverse, but deem it
our duty to point out the difficulties in view of a retrial.
See, as bearing upon this proposition, *Hawkins v. R. R.,*
3 Wash. St. 592 (28 Pac. 1021, 16 L. R. A. 808, 28 Am.
St. Rep. 72).

5. PAIN AND
SUFFERING:
instructions.

III. We may add in this connection that, in our
opinion, the motion for a new trial should have been sus-
tained both on the ground of newly discovered evidence
and also because the verdict is excessive.
There was no negligence in failing to dis-
cover this testimony before trial, and it was
not cumulative in character. It tended to
show that plaintiff had not received the injuries of which
she complains, that she was around about her work in the

6. NEW TRIAL:
newly
discovered
evidence:
excessive
verdict.

ordinary time after childbirth, and that she is not permanently injured. The excessive character of the verdict is doubtless due to the erroneous admission of some of the testimony to which we have referred, and to the failure of the trial court to properly present the matters which it was right for the jury to consider in making up its verdict.

For the errors pointed out, the judgment must be, and it is, *reversed.*