ADA PEARL MORTON, Appellee, v. EQUITABLE LIFE INSURANCE COMPANY of Iowa, Appellant.

No. 42311.

April 3, 1934.

Rehearing Denied October 18, 1934.

Henry & Henry, and Devitt, Eichhorn & Devitt, for appellant.

McCoy & McCoy, and H. F. Wagner, for appellee.

Anderson, J.—This is an action upon a life insurance policy for $5,000, issued by the defendant-appellant upon the life of Frank H. Morton, on September 16, 1931. The insured died October 16, 1931. The plaintiff is the widow of the insured and the beneficiary named in the policy of insurance. The policy in the action contained the following provision:

"3. Suicide. If within one year from the date of issue the insured shall commit suicide, whether sane or insane, the liability of the Company shall be limited to the amount of premiums paid in cash on this policy."

The first premium of $152.30 was paid. The appellant admitted its liability to the extent of the premium paid, but denied any other liability under the policy, alleging as its defense, that

the insured, Frank H. Morton, committed suicide within one year from the date of the policy, and that under the provision of the policy quoted the liability of the company should be for the premium paid only.

There was a trial to a jury, and, after the defendant's motion for a directed verdict was overruled, the jury returned a verdict for the defendant. The plaintiff-appellee filed a motion for a new trial, and exceptions and objections to the instructions given to the jury by the court, and exceptions and objections to the refusal of the court to give instructions requested by the plaintiff-appellee. The first five grounds of the motion for new trial presented the grounds that the verdict is contrary to law, contrary to the evidence, not supported by sufficient evidence, contrary to the weight of the evidence, and contrary to the instructions of the court. Grounds 6, 7, 8, and 10 of the motion allege that the court erred in overruling objections interposed by the plaintiff to evidence offered by the defendant, and in sustaining objections made by the defendant to evidence offered by the plaintiff, and in overruling motions made by the plaintiff to strike evidence offered by the defendant all "as more fully appears from the shorthand notes of the official shorthand reporter, which by reference are made a part hereof". The ninth ground for a motion for new trial alleges that the court erred in permitting the introduction, over the objections of the plaintiff, of the certified copy of the death certificate, Exhibit I. Grounds 11 and 12 of the motion raise the objections and exceptions to instructions Nos. 8 and 1, as given by the court to the jury.

The plaintiff's complaint as to instruction No. 8 is to the effect that the court erred in admitting the alleged death certificate in evidence for the reason that it was not properly certified in accordance with the requirements of the statute; that the statements therein contained giving the cause of death as "suicide" and "suicide by hanging", are merely conclusions of the coroner, and that it was improper to submit the same to the jury; and that the court should have instructed the jury that they must disregard the conclusions of the coroner as to the cause of death as stated in said alleged certificate; that the alleged certificate, if admissible at all, is only presumptive evidence of the facts therein stated, and that the conclusions of the coroner are not facts, and that under the instruction of the court the jury was permitted to consider the conclusions contained in said alleged certificate as facts; and that the court

should have advised the jury the difference between the "conclusions" and the "facts" as stated in said certificate.

Instruction No. 8 is as follows:

"The defendant company has introduced in evidence the death certificate of Frank H. Morton. As to this you are instructed that our law provides that where a death occurs and there is no physician in attendance, the coroner of the county is authorized to sign the death certificate; and our law further provides that a certified copy of the death certificate may be introduced in evidence as presumptive evidence of the facts therein stated, but this presumption is not conclusive and may be rebutted and overcome by the other evidence in the case or by facts and circumstances shown on the trial. It is for you to say as to whether or not said presumption has been overcome."

Appellee's complaint as to instruction No. 1, as given by the court, is to the effect that the court did not properly state the issues to the jury in such instruction. That the court in said instruction submitted to the jury in detail the defense relied upon by the defendant under the provision of the policy relieving the company from liability, if the insured should commit suicide within one year from the date of the issuance of the policy, but did not refer to or call the jury's attention to the provision of the policy relied upon by the plaintiff, to wit, that the company agreed to pay the beneficiary $5,000 upon the surrender of the policy and the receipt of due proof of the death of Frank H. Morton; that the court covered the provision of the policy upon which the defendant was relying to defeat recovery, but did not state to the jury the provision of the policy upon which the plaintiff was relying for recovery.

The motion for a new trial was sustained by the court generally and without any comment or indication as to which ground or grounds of the motion it based its ruling. From such ruling, the defendant-appellant prosecutes this appeal.

It is the settled law of this state that the appellate court will not ordinarily interfere with the discretion of the trial court in granting a new trial. It must appear clearly that there has been an abuse of the discretion lodged in the trial court before this court will interfere with a ruling granting a new trial. The fact that the trial court has had the witnesses before it, heard their testimony,

had opportunity to observe the effect of the evidence and the general conduct of the trial, places the trial court in a much better position to pass upon the question as to the right of a new trial than this court can be by presentation of the issues upon appeal. Resultantly, we have been very reluctant to interfere with the action of trial courts in granting motions for new trials. Brooks v. Brotherhood of American Yeomen, 115 Iowa 588, 88 N. W. 1089; Holland v. Kelly, 149 Iowa 391, 128 N. W. 338; Royer v. King's Crown Plaster Company, 147 Iowa 277, 126 N. W. 168; Post v. City of Dubuque, 158 Iowa 224, 139 N. W. 471; Woodbury Co. v. Dougherty & Bryant Co., 161 Iowa 571, 143 N. W. 416; Thomas v. Illinois Central R. Co., 169 Iowa 337, 151 N. W. 387; Rupp v. Kohn, 210 Iowa 969, 232 N. W. 174.

The court can set aside a verdict on its own motion. Thomas v. Illinois Central R. Co., supra.

While no one ruling may in itself constitute error sufficient to set aside a verdict, yet when taking the whole record and considering all the rulings and exceptions together, in connection with the knowledge and observation of the trial court as to the course and conduct of the trial, the trial court may conclude, and properly so, that there has not been a fair trial, and that the losing party is entitled to another hearing. Holland v. Kelly, 149 Iowa 391, 128 N. W. 338.

Appellant's first contention is that the trial court should have directed a verdict for the defendant. We are unable to see any merit in this contention. On the record as it stood at the time defendant's motion to direct a verdict was made, there was a conflict in the evidence on the defense interposed by the defendant, that is, as to whether the insured had committed suicide. On the face of the record at that time, with the legal presumption existing against the act of suicide, the court would not have been warranted in directing a verdict for the defendant.

Defendant's next contention is that the court erred in sustaining the plaintiff's motion for a new trial for the reason that the evidence showed as a matter of law that the insured committed suicide; and that the defendant was entitled to an affirmative holding by the court to this effect. And for the further reason that, in sustaining plaintiff's motion for a new trial on any of the grounds stated in the motion, was error. The defendant contends that only

four of the grounds for a new trial were specific enough to demand the attention of the court.

We have heretofore indicated the grounds of the motion. The defendant-appellant only argues four of them. Many of the grounds not argued go to the rulings of the trial court in the admission and exclusion of testimony. We have read the transcript, which has been certified to us, carefully, and we are constrained to say that there are many errors and inconsistencies in the rulings of the trial court upon the admission or exclusion of testimony. It would extend this opinion to unnecessary length if we should attempt to point out and discuss the many rulings of the trial court of which the plaintiff had just cause to complain, and if the trial court had based its ruling upon errors committed in ruling upon the admission or exclusion of testimony, in our judgment, it should not be disturbed.

 One of the grounds for new trial was that the court erred in permitting the introduction of the death certificate, Exhibit I.

Section 2319 of the Code makes it the duty of the undertaker or other person in charge of the funeral to see that a properly executed death certificate shall be filled out and filed with the local registrar of the district in which the death occurred. And section 2320 provides the form of such death certificate. Paragraphs 1 to 14 of section 2320 provide for the certification of personal particulars including place of death, full name, residence, sex, color, conjugal condition, date of birth, age, occupation, place of birth, and names of father and mother. Paragraph 15 provides for the name and address of the informant as to the foregoing data.

Part II of the section including paragraphs 16 to 20, inclusive, provides that there shall be stated the date of death, period of medical attendance, cause of death, length of residence in the state; and this information shall be certified by the physician or official making the certification. Part III of the section consists of paragraphs 21 to 23, inclusive, and provides that there shall be stated the place of burial, date of burial; and that this data shall be certified by the undertaker or person acting as such.

Section 2321 of the Code provides that the personal particulars shall be obtained from the person best qualified to supply them; that the death and last sickness particulars shall be furnished by the physician or in the absence of such person, by the coroner. The burial particulars shall be supplied and certified by the under-

taker. And the section further provides that "each informant shall certify to the particulars supplied by him by signing his name below the list of items furnished."

Paragraph 18 of section 2320 provides for a showing as to the course of disease or sequence of causes resulting in the death, and further provides that:

"Causes of death which may be the result of either disease or violence shall be carefully defined; and if from violence, the means of injury shall be stated, and whether (probably) accidental, suicidal, or homicidal."

Section 2431, which is in another chapter of the Code, provides that:

"Any certified copy of the record of a birth, death, or marriage, made under this chapter, shall be presumptive evidence in all courts and places of the facts therein stated."

Certified copy of the death certificate involved in this case was not certified or signed by any person except the coroner. Incidentally, he was deceased at the time of the trial. The personal particulars provided for in the first 14 paragraphs of Part I of section 2320 are not signed or certified by any one, however, it was indicated by typewriter that the informant was Mrs. Ada Morton. In giving the details of the death and cause thereof, as required by paragraph 18 of the section, the coroner used the words "suicide by hanging", and in another place "suicide". It will be noticed that the word "probably" as occurs in the statute was not used.

It also appears that the certification of burial particulars was not made by or over the signature of the undertaker.

Notwithstanding the fact that section 2321 provides that "each informant shall certify to the particulars supplied by him by signing his name below the list of items furnished", and notwithstanding the omission of the word "probably", the defendant-appellant insists that this death certificate was admissible in evidence under the provisions of section 2431, as presumptive evidence of the facts therein stated.

The plaintiff interposed proper and sufficient objection to the introduction of this death certificate when it was offered in evidence.

We do not think that this death certificate sufficiently com-

plies with the provisions of the statute to make it admissible in evidence. We do not think that the coroner should be permitted to state the cause of death as "suicide" or "suicide by hanging" without using the word "probably" as appears in the statute. Neither do we think the certificate is sufficient if it is not signed and certified by the informant, and also by the undertaker. Neither do we think that the statement of the cause of death or the *probable* cause thereof is a statement of *fact* as is contemplated in section 2431, making such certificate presumptive evidence of the *facts* therein stated. The statutes providing for the making and filing of certificates of birth, death, and marriage are for the purpose of perpetuating testimony as to such facts and data as are specific and known, but do not contemplate the perpetuating of hearsay testimony, which is merely conclusions or opinions of the person or persons making them. The statement in the death certificate in this case certified by the coroner, as to the cause of death, is necessarily, and especially in this instance, a conclusion, and not a statement of fact. It was not made by an expert or one qualified to state even a *probable* conclusion. It is our opinion that the death certificate was not admissible as evidence in this case, and that the court erred in admitting it and submitting it to the jury.

In Michalek v. Modern B. of A., 179 Iowa 33, 161 N. W. 125, we had under consideration the admissibility of the statement of a coroner as to his opinion concerning the death in question. This was before the enactment of the present statutory provisions. However, we said in that case that while we had sustained the admissibility of a coroner's finding in some cases, we did not assent to such holding, but that we had not gone to the extent of holding that an opinion included in a report to an administrative board or commission having no interest therein or official duty in connection with the death of the deceased except as an item in the compilation of a table of vital statistics, was admissible as evidence in a proceeding to determine civil rights. And we there said that the facts and contents of such reports to the state board of health are clearly hearsay. In the case of State v. Flory, 198 Iowa 75, 199 N. W. 303, which is cited and relied upon by the defendant-appellant, we did hold that a certified copy of the death certificate prepared by the coroner and made a part of the vital statistics records was admissible, but that case involved a charge of murder. The state was prosecuting Flory for murder. The public interest and welfare

were involved. The case was not between private parties and no private interests or rights were involved. The case now before us is a civil action where property and private rights are involved. We think that the case of Wilkinson v. National Life Ass'n, 203 Iowa 960, 211 N. W. 238, modifies the ruling in the Flory case, and determines the question we have under discussion in this case. In the Wilkinson case, which was decided later than the Flory case, we reviewed the cases, quite thoroughly, involving the question we here have under discussion, and there held that the verdict of the coroner's jury in an action on a policy of insurance, is not admissible on the issue as to the cause of death. In that case we quoted from the case of Michalek v. Modern B. of A., supra, as follows:

"This court has sustained the admissibility, in such cases, of the verdict of a coroner's jury—an extreme holding to the propriety of which the writer does not assent; but it has never yet taken the step beyond that limit which is required to give admissibility in evidence of such officer's opinion or of his report of such opinion to an administrative board or commission having no interest therein or official duty in connection with the death of the deceased, except as an item in the compilation of a table of vital statistics."

We further said in the Wilkinson case:

"The proceedings (coroner's) have no reference to and are not intended for the ascertainment of civil rights or liabilities. The parties interested in such rights or liabilities are not before the coroner's jury, at least by virtue of their interests. Such interests are not before the coroner's jury for determination, nor are the parties to them as such before the court or heard. The finding in most cases must be as to such parties merely an opinion and hearsay. Certainly, it is not, as between them, a judicial determination. The coroner has not the means, nor has he, as to civil rights involved, the knowledge essential to a judicial inquiry. The proceedings are not conducted for the purpose of determining civil rights nor in a manner adapted to the ascertainment of the facts determining such rights. The proceedings are informally and often carelessly conducted. In this case the verdict could have been no other than a mere ex parte conclusion by the men who happened to constitute the coroner's jury and-founded on hearsay so far as the

parties to this controversy are concerned. The great weight of authority is opposed to the admissibility of the proceedings on the inquest and verdict, as evidence of the cause of death in a later civil proceeding. We are of the opinion that the reception of the proceedings in the inquest and the verdict was error." (Citing a large number of cases.) We further said, "The expressions in our cases referred to, to the effect that the inquest or verdict is admissible, do not correctly state the law and are overruled."

It seems to us that there is much more reason for excluding a death certificate containing not facts, but hearsay, opinion and conclusion, than there is for excluding the proceedings of a coroner's jury. And we are of the opinion that section 2431 making certificates of birth, death, or marriage admissible as presumptive evidence in all courts, relate only to the *facts* as contained in such certificate, and not as to any statement therein that is purely and clearly an opinion or conclusion and necessarily founded on hearsay.

In Backstrom v. New York Life Ins. Co., 183 Minn. 384, 236 N. W. 708, the court had under consideration the admission of a death certificate such as the one in the case at bar in which the cause of death was given as "suicide by firearm". The Minnesota statutes contained provisions similar to those of Iowa, providing for the preparation and filing with the registrar of vital statistics, of a certificate of death, giving the facts and time of death, the disease, or injury, causing death, and, if from violence, the means and circumstances of the injury and whether indicating accident, suicide, or homicide. Minnesota also had a statutory provision making a certified copy of such death certificate prima facie evidence of the facts therein stated, in all the courts of the state. In the cited case death was caused by gunshot wound. The death certificate recited that the cause of death was "suicide by firearm". The death certificate was offered in evidence by the defendant company, the court said, "in order to get before the jury the coroner's opinion that the wound was inflicted by the insured himself." The supreme court of Minnesota said:

"Is this a 'fact' of which the certificate is made prima facie evidence by statute? It will be observed that the statute requires, in cases of death by violence, that the means and circumstances be stated. * * * Did the legislature intend by this statute to

change the rules of evidence in suits between private individuals by including with the 'facts' stated to be prima facie evidence the 'indications' which the coroner, physician, registrar, or subregistrar might infer from the facts discovered? The statute does not say that the certificate shall be prima facie evidence of all the matters required to be incorporated therein. In making the certificate prima facie evidence, it confines itself to 'facts' and makes no reference to 'indications', inferences, or conclusions drawn by the certificate maker. As to the cause of the gunshot wound, the certificate necessarily stated either matter which rested in hearsay or the opinion of the maker on a subject which under the rules prevailing prior to this statute was not a proper subject of either hearsay or opinion evidence. * * * Certain exceptions to the hearsay and opinion rules are recognized from necessity, but we are traditionally reluctant to add to those exceptions in relation to matters which have been consistently left for courts or juries to decide without that class of evidence. That very reluctance makes it improbable that the legislature intended to depart from established rules in a statute of this kind. * * * Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921. * * * We are not persuaded that the legislature intended that the conclusions and inferences drawn by the certificate maker as to whether the violence was suicidal, homicidal, or accidental, should be prima facie evidence thereof between private parties. That information in the certificate is obviously for the compilation of vital statistics. We therefore hold that the trial court should have sustained the objection to the admission of the medical certificate in so far as it reads, 'suicide by firearm'."

To the same effect see the case of Beglin v. Metropolitan Life Ins. Co., 173 N. Y. 374, 66 N. E. 102, and the cases cited therein. Also, Brotherhood v. Barton, 46 Ind. App. 160, 92 N. E. 64; Omaha & C. B. St. R. Co. v. Johnson, 109 Neb. 526, 191 N. W. 691; Massachusetts Protective Ass'n v. Cranford, 137 Miss. 876, 102 So. 171; Oklahoma Aid Ass'n v. Thomas, 125 Okl. 190, 256 P. 719. In the last cited case the Oklahoma court held that the death certificate provided for by the statutes similar to ours, and which made the same prima facie evidence of the facts therein stated, applies only to questions arising under the statutory provisions so far as they involve public rights and public health, but do not change the

statutory and common-law rules of evidence in controversies between private parties growing out of contract. And the court there held that a certified copy of the death certificate is not admissible in an action upon an insurance policy for the purpose of showing suicide. There are many other courts pronouncing the same doctrine and rule, but in some of these the statutory provisions that we have mentioned were absent, and no further benefit would result from further citations.

What we have said necessarily works an affirmance of. this case and it is unnecessary to mention further grounds upon which the motion for new trial was based. However, we might indicate that instruction No. 1, as given to the jury by the court was not a full and complete statement of the issues, and, while this alone might not be sufficient upon which to base an affirmance, the instruction should be criticized.

■ There was also error committed by the court in permitting defendant's counsel to read from a medical work and then ask his own witness if he agreed with the·statement as read to the jury. The witness, a doctor, had testified as to the substance of the text later read to him, and we are of the opinion that the court should not have permitted the reading of the text, and so doing was error. We have held that medical works are not admissible in evidence, but there are exceptions to that rule, as where a witness bases an opinion upon some medical authority, rather than his personal experience and education, he may be cross-examined in regard to the teachings of recognized authorities to test the accuracy of his knowledge. Bixby v. Railway Co., 105 Iowa 293, 75 N. W. 182, 43 L. R. A. 533, 67 Am. St. Rep. 299; Stewart v. Equitable Life, 110 Iowa 528, 81 N. W. 782; State v. Peterson, 110 Iowa 647, 82 N. W. 329; Cronk v. Wabash Railroad Co., 123 Iowa 349, 98 N. W. 884; State v. Donovan, 128 Iowa 44, 102 N. W. 791; Etzkorn v. City of Oelwein, 142 Iowa 107, 120 N. W. 636, 19 Ann. Cas. 999; Ingwersen v. Carr, 180 Iowa 988, 164 N. W. 217.

In view of the fact that a retrial of this cause must be had, we refrain from a discussion of the evidence. We might mention, however, that there was a serious controversy in the testimony of the doctor experts as to whether death was or was not suicide, and that such controversy and conflict in the evidence clearly presented a question for the determination of the jury.

It follows from the foregoing discussion that the district court

did not err in granting the plaintiff's motion for new trial. Affirmance necessarily follows.—Affirmed.

CLAUSSEN, C. J., and STEVENS, ALBERT, KINDIG, and KINTZINGER, JJ., concur.