N. B. WILSON et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION, appellee.

No. 49359.

(Reported in 90 N.W.2d 161)

May 6, 1958.

J. R. McManus, of Des Moines, for appellants.

Norman Erbe, Attorney General, C. J. Lyman, Special Assistant Attorney General, and Mitchell & Beving, of Des Moines, for appellee.

Oliver, J.—Plaintiffs own a seven and one-half or eight-acre tract of land in the east part of Des Moines. Defendant, Iowa State Highway Commission, condemned a narrow strip along one side of this land, amounting to a fraction of an acre. A condemnation commission assessed plaintiffs' damages at $350. Plaintiffs appealed to district court and that jury assessed the damages at $14,000. The district court set aside that verdict and granted a new trial. From that order plaintiffs have appealed to this court.

Plaintiffs' tract of land is roughly the shape of an arrow-head pointing northeast, and located at the southwest corner of the intersection of Avenue Frederick M. Hubbell (U. S. Highways 6 and 65 and State Highway 64) which there runs north-east and southwest, and East Forty-second Street, which runs north and south. Both streets are paved. The tract abuts the southerly side of Avenue Hubbell 754 feet and the west side of East Forty-second Street for approximately the same distance. The southwesterly 287 feet along Avenue Hubbell is zoned residential and is used for pasture and growing corn. The easterly part along Avenue Hubbell is zoned commercial. Upon it, immediately below the intersection, is a building about 30 by 100

feet which houses a restaurant and a garage and service station for cross-country trucks and other motor vehicles, with outside pumps for gasoline and Diesel fuel, also a two-story building, 34 by 46, used as a law office and residence, with sleeping accommodations for twenty truckers.

These improvements face Avenue Hubbell. They are immediately across Avenue Hubbell from the restaurant, garage, filling station and truck stop involved in Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755. As therein stated, the Highway Commission and city, acting under chapter 148, Acts Fifty-sixth General Assembly, chapter 306A, Code of Iowa, 1958, designated Avenue Hubbell between certain points, as a controlled-access facility for public use.

The pavement was widened to about 49 feet and except at certain intersections was divided into separate roadways by raised humps of concrete, referred to as "jiggle bars", constructed along its center and which traffic was forbidden to cross. In connection with the widening, the highway commission instituted this proceeding to acquire a strip of plaintiffs' land along the edge of Avenue Hubbell, two feet wide and 754 feet long, also the right to encroach upon a strip of plaintiffs' pasture land along Avenue Hubbell 20 feet wide and 170 feet long, for the filling, widening and maintaining of the shoulder of the pavement along a draw or low area. This encroachment required the removal of a number of trees. There was also evidence of the removal of a fence and one or two signs.

Mr. Wilson testified plaintiffs bought the tract of land in 1948 for $8500 and paid $64,500 for the construction of the improvements. He estimated the market value of the property at $125,000 before and $75,000 after the condemnation in 1956. Three expert valuation witnesses for plaintiffs fixed the before and after value of plaintiffs' property at (1) $90,000 and $64,500, (2) $84,500 and $61,500, and (3) $96,000 and $64,000. Two valuation witnesses for defendant fixed the value at (1) $76,000 before and $75,500 after, and (2) $82,436 before and $81,567 after. It may be observed the highest estimate of plaintiffs' damages given by either witness for defendant was $869 and the lowest estimate by any witness for plaintiffs was $23,000, more than twenty-six times that amount.

Three trial jurors made affidavits that during their consideration of the case several jurors argued to the others that the construction of Avenue Hubbell with a center dividing line containing "jiggle bars" and the prohibition of left turns across the center line, except at street intersections, should be considered in fixing the damages to be awarded plaintiffs; that vehicles coming from the northeast, being unable to make a left turn to plaintiffs' property, would not proceed down the highway to a point where a U-turn would be permitted and then return to plaintiffs' property to patronize the businesses thereon; that this would result in a substantial loss of business for which plaintiffs should be paid and that such items should be considered by the jury in arriving at its verdict; also that the jury should consider the possibility, referred to in arguments for plaintiffs, that Avenue Hubbell might be converted into a parkway, thereby doing away with plaintiffs' truck-stop business. Counter-affidavits were made by the other nine jurors.

Instruction No. 12 stated in part that the Highway Commission and city were making Avenue Hubbell a controlled-access highway for the purpose of expediting travel, and for the preservation of the public peace, health and safety and the promotion of the general welfare, that this was a proper enterprise, and that the city had the right, under its police power, to regulate traffic on the highway and create a divided highway. "If, because of the regulation of traffic and the division of the highway, some circuity of travel is required by the public using this highway, such regulation cannot be made the basis for a claim of damages against the Iowa State Highway Commission or the City of Des Moines, and such issue has been withdrawn from your consideration."

The order setting aside the verdict recited the amount allowed by the jury was so excessive as to show passion and prejudice; that the verdict was contrary to law because the only items submitted to the jury could not justify any such verdict; that because of the various ordinances of Des Moines in evidence, the court believed the jury might have given effect to the divided highway, "jiggle bars" and limited left turns; that this proposition, which was referred to in the affidavits of the three jurors, had been taken from the consideration of the jury by Instruction

No. 12 and that: "This court believes that the verdict of the jury in this case does not effect justice as between these parties and that the jury did not do its duty under the law and the instructions." The order stated the motion for new trial was sustained as to paragraphs 1, 2, 3 and 18. These paragraphs include the foregoing propositions, with elaborations and some additions.

 I. Appellants contend the matters referred to in the affidavits of the jurors inhered in the verdict and hence could not be used to impeach it and that the trial court erred in giving consideration to such affidavits. This contention is not meritorious. The affidavits tended to show misconduct of members of the jury in discussing and considering elements of damage withdrawn from their consideration by the instructions. This was merely evidence of what occurred in the jury room. It should be distinguished from evidence of the effect of such occurrences on the verdict of a juror or jurors, which may not be shown to impeach the verdict.

In re Estate of Murray, 238 Iowa 112, 119, 120, 26 N.W.2d 58, 63, states:

"The portion of the testimony of the jurors to the effect such statements materially affected the verdict is to be disregarded. That is a mere matter of opinion which does inhere in the verdict. [Authorities] * * *.

"But it was proper to show what did transpire in the jury room. That is a fact and not an opinion. [Authorities]"

There are like holdings in Keller v. Dodds, 224 Iowa 935, 940–942, 277 N.W. 467; Hall & Co. v. Robison, 25 Iowa 91, 93; Douglass v. Agne, 125 Iowa 67, 71, 72, 99 N.W. 550.

II. The order setting aside the verdict and granting a new trial was based upon various grounds. Some rules applicable to the consideration of such orders are expressed as follows in Jordan v. Schantz, 220 Iowa 1251, 1257, 264 N.W. 259, 262:

 "It is well settled in this state that the trial court has a wide discretion in the matter of granting new trials in jury cases, and that an order of court granting a new trial will not be interfered with on appeal except where it clearly appears that there has been an abuse of that discretion. We have said that if

any one of several grounds of a motion for new trial is good, that the action of the trial court in granting a new trial will be sustained. Perry Natl. Bank v. Engnell, 198 Iowa 26, 199 N.W. 283. We have said further, that even though no single one of them be sufficient in itself, yet, if when they are all considered together, they can reasonably support the conclusion of the trial court that a fair trial has not been had, the order for a new trial will be sustained. Morton v. Equitable Life Ins. Co., 218 Iowa 846, 254 N.W. 325. We recognize that the trial court has a wider discretion in granting new trials than this court has."

Substantially the same statements appear in Greiner v. Hicks, 231 Iowa 141, 144, 145, 300 N.W. 727, which cites, as supporting authorities, the Schantz case, Brunssen v. Parker, 227 Iowa 1364, 291 N.W. 535, and Morton v. Equitable Life Ins. Co., 218 Iowa 846, 850, 254 N.W. 325, 96 A. L. R. 315. These rules were considered and approved in Hall v. West Des Moines, 245 Iowa 458, 62 N.W.2d 734, a condemnation case.

In the case at bar there was substantial affirmative evidence to support the finding of the trial court that the jury considered elements of damages which had been taken from its consideration by Instruction No. 12. This finding justified the conclusion that the jury did not properly perform its duty under the law and the instructions. Hence, the order setting aside the verdict and granting a new trial was not an abuse of the discretion lodged in the trial court. Henrich v. Oppedal, 248 Iowa 509, 81 N.W.2d 429.

III. The foregoing conclusion is determinative of the appeal. The consideration of other errors complained of by appellee was not deemed necessary to the decision. However, in view of a probable new trial some of them should be given attention.

As already stated, this part of Avenue Hubbell had been designated as a controlled-access facility for public use as authorized by chapter 148, Acts Fifty-sixth General Assembly, chapter 306A, Code of Iowa, 1958. Since the trial of this case this statute has been considered in Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755.

That case concerned a tract of land fronting on Avenue Hubbell, upon which is a filling station with connected garage and café which caters primarily to heavy cross-country trucks,

with a place where trucks may park and truckers sleep. These improvements are almost directly across Avenue Hubbell from plaintiffs' similar improvements, and cater to the same type of business. Other property in the Smith case is a dwelling in the vacant space west of the filling station and another dwelling on the same side of Hubbell as plaintiffs' property which it adjoins on the southwest.

IV. In the instant case the notice of condemnation described the land sought to be appropriated, and continued: "together with all rights of direct access to said Avenue Frederick M. Hubbell from condemnee's property adjacent thereto, excepting and reserving to the condemnee the right of direct access from said highway at Station 543+ for residential purposes, only, and at Station 546+70± Station 548± and Station 549+50± for residential or commercial purposes, only, provided, however, that when and if a frontage road is constructed, such right of direct access shall be limited to the frontage road."

The assessment of damages by the condemnation commission was made upon that basis.

However, the Substituted Answer of the Highway Commission, in District Court, stated:

"6. The defendant by way of further answer to the plaintiffs' petition states that it, at no time, intended to destroy or substantially interfere with the plaintiffs' right of access to Avenue Frederick M. Hubbell so as to constitute a taking thereof, and the defendant Iowa State Highway Commission does hereby waive, surrender, release and abandon any and all of plaintiffs' rights of such access which may have been affected or claimed to be affected by this condemnation proceeding; and the defendant further states that the only manner and extent to which the plaintiffs' rights of access to said Avenue Frederick M. Hubbell will be affected will be a reasonable and proper regulation and control thereof in the manner and within the limits prescribed by the legislature in chapter 306A, I. C. A., and particularly section 306A.4 thereof, all in the interests of the immediate preservation of the public peace, health and safety and for the promotion of the general welfare; and that such regulation and control is in the proper exercise of the police power of the State of Iowa and may vary from time to time as the needs

of public use of the highway and safety may reasonably require; and that such regulation and control does not constitute a taking of the plaintiffs' property within the meaning of section 18, Article I of the Constitution of the State of Iowa."

It will be observed the foregoing waiver, surrender and abandonment has reference to the taking, by eminent domain, of the right of access of plaintiffs from their land to Hubbell Avenue and is based upon the premise that there will be no such taking but only such reasonable regulation and control thereof as may be proper under the exercise of the police power of the State.

█ That a condemnor, in connection with trial in district court of an appeal in a condemnation proceeding, may, by express waiver and abandonment, proceed to condemn less property than that originally listed, was determined in De Penning v. Iowa Power & Light Co., 239 Iowa 950, 33 N.W.2d 503, 5 A. L. R.2d 716. However, this procedure would not be applicable where there is such a substantial or material impairment or interference with the right to access—ingress and egress—to the property as to constitute a taking of property or property rights for which compensation must be made.

Here plaintiffs were furnished four curb drops for driveways along the south side of Avenue Hubbell. At places other than curb drops, curbs are six inches high and six inches wide. There are three commercial curb drops, each 34 feet wide and one residential curb drop 18 feet wide. The plans apparently called for the driveways to be located at the places indicated in the notice of condemnation. This would allocate the residential driveway to the property zoned residential, one commercial driveway, apparently, to the Diesel pumps and office building and two commercial driveways to the filling station, one probably for ingress and one for egress. The engineer in charge of the work for the Highway Commission testified these plans were tentative only and the driveways could be moved either way, apparently if plaintiffs so directed. He testified also that these planned curb drops are standard openings for driveways which will be placed "up and down the entire length of this Project U-206." In addition to the four entrances above mentioned

there is a fifth entrance to the property from Avenue Hubbell which is not disturbed. Traffic on Hubbell from the northeast may turn to the left across Hubbell at its intersection with Forty-second Street and there enter the property alongside the filling station. Hence, traffic along Avenue Hubbell from each direction may have direct ingress and egress to and from plaintiffs' filling station and commercial property. Plats and photographs indicate the surface of the ground there is approximately even with the pavement and readily adaptable for driveways at or near the places indicated.

Iowa State Highway Commission v. Smith, 248 Iowa 869, 876, 877, 82 N.W.2d 755, 760, points out:

■ ■ "In determining whether limitations placed by the commission upon the number and location of access connections are reasonable the judgment of the commission is entitled to deference because of its superior knowledge of highway and traffic matters. But the commission's authority is not above that of the courts. [Citation]

"No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable or, as we have said, 'free and convenient.' In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case." (Citations)

A note entitled Controlled-Access Highways in Iowa, in 43 Iowa Law Review, 258, states at page 269:

"Whether a particular action of the state which interferes with the right of access is within the limits of police power or falls into the classification of a 'taking' of property under eminent domain must, in each instance, depend upon the particular facts before the court."

Save the Smith case, some facets of which are almost the same as those in the case at bar, none of the decisions called to our attention is here closely in point factually. The court there finds (page 878 of 248 Iowa) under the facts shown:

"So far as the filling station with connecting garage and café is concerned, we think defendants have not been deprived of reasonable or free and convenient access thereto. This conclusion seems unavoidable from our holding they are not en-

titled to unlimited access to their filling station at all points along the highway. Two driveways connecting such an establishment with a busy highway appear to be all that are reasonably necessary and are all that are usually found. Thirty-four feet seems to be sufficient width for such a driveway."

In the case at bar the three Avenue Hubbell commercial curb openings in front of the filling station and commercial buildings would permit these to be conveniently served by driveways immediately beside them, running directly to such curb openings. The locations of the commercial curb openings appear to be similar to those generally found alongside service stations of like character and situation. Although in most instances the question whether the abutting property owner has been denied reasonable access to the highway is one of fact, we are of the opinion that nothing in the record here would furnish substantial support for a finding that plaintiffs were deprived of reasonable or free and convenient access to Avenue Hubbell from their filling station and commercial buildings. On the contrary, it appears the commercial curb openings would afford means for reasonable access thereto. Hence, no question of fact on this point was generated by the record.

However, it is not clear from the record whether the single residential curb opening would be sufficient to afford reasonable access to Avenue Hubbell for the southwest part of the tract fronting such avenue, and we conclude that under such record that question was one of fact for the jury. Therefore, the court did not err in refusing to sustain, as a matter of law, the defense pleaded in paragraph 6 of the Substituted Answer.

V. Plaintiff Mr. Wilson testified that, prior to the condemnation, vehicles could drive on the property from Avenue Hubbell at any place, which was very desirable and of very much value in the operation of his truck stop. "Q. Now if you were limited in your access and approaches to that property from the Frederick Hubbell side, in your judgment would that affect the value of the property in controversy after the condemnation proceedings?" Defendant's objections were overruled and the witness answered, "Yes. * * * It would diminish it very much." The objections should have been sustained.

1006

In the language of the Smith case: "* * * they are not entitled to unlimited access to their filling station at all points along the highway." "It [the commission] has the undoubted right, in the interest of public safety, to regulate the means of access to abutting property provided its regulations are reasonable and strike a balance between the public and private interest. And an abutting owner may make only such use of his right of access as reasonable regulations permit." Such regulations would not constitute a "taking" entitling the owner to compensation therefor unless it deprived the property of reasonable access to the highway.

In this connection Instruction No. 9 states: "An owner is entitled to free and convenient access to the property."

Instruction No. 12 states defendant is required to pay, "where the right of access from the land of the plaintiffs has been impaired."

Instruction No. 5 requires the jury to determine the value of the property remaining after "any limitation upon access from the property."

The instructions should have adequately advised the jury concerning the foregoing rules.

VI. Over defendant's objections Mr. Wilson was permitted to testify to the monthly net income derived from the filling station by a lessee and the gross income of the café. No decision of this court upon the precise question of the admissibility of such evidence has been brought to our attention.

Nichols on Eminent Domain, section 19.3, volume V, pages 222, 233, states: "It is, accordingly, well settled that evidence of the profits of a business conducted upon land taken for the public use is not admissible in proceedings for the determination of compensation which the owner of the land shall receive. The profits of a business are too uncertain, and depend upon too many contingencies to safely be accepted as any evidence of the usable value of the property upon which the business is carried on."

The text in 18 Am. Jur., Eminent Domain, section 345, and a note in 7 A. L. R. 163, 164, state the American jurisdictions so hold "with remarkable unanimity." An exception to the rule appears to be evidence of profits from the use of land devoted

to agricultural purposes. Among the numerous decisions supporting the rule are: Chicago Land Clearance Commission v. Darrow, 12 Ill.2d 365, 372, 146 N.E.2d 1, 5; Sowers v. Schaeffer, 155 Ohio St. 454, 99 N.E.2d 313, 315; State v. Cerruti, 188 Ore. 103, 214 P.2d 346, 348, 349, 16 A. L. R.2d 1105. We hold the court should have sustained the objections.

 VII. Mr. Wilson testified, "The Highway Department have been out there for five months and it appears that they will be out there about five more months"; that since traffic had been detoured they were not operating the café, and that the center slab of the paving was completed but the side strips were not. The court properly instructed that in making its allowance to plaintiffs the jury should not consider their loss of revenue from that cause. Upon retrial, evidence of this nature should be avoided.

Upon such retrial the court and counsel on each side will have the benefit of the decision in the Smith case, supra, which should be of substantial aid to them.

The order of the trial court setting aside the verdict and granting a new trial is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.