Jerry KURTH, Individually and d/b/a
Fisherman's Wharf Restaurant,
Appellee,

v.

IOWA DEPARTMENT OF
TRANSPORTATION,
Appellant.

No. 99–0666.

Supreme Court of Iowa.

May 31, 2001.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Mark Hunacek, Assistant Attorney General, for appellant.

Richard J. Barry of Montgomery, Barry & Bovee, Spencer, for appellee.

SNELL, Justice.

This fee condemnation case asks us to determine what type of evidence can be presented to the jury and what is proper

language to instruct the jury. The Iowa Department of Transportation (DOT) maintains that the jury was impermissibly allowed to hear testimony of the value of the business on the land being condemned. We agree. The jury's verdict is reversed and the case remanded for a new trial.

## I. Factual Background and Procedure

Jerry Kurth owned and operated the Fisherman's Wharf Restaurant (Wharf) on West Lake Okoboji. Kurth purchased this property in 1994 for approximately $85,000. Kurth made several improvements to the restaurant. On August 5, 1997, Kurth received a condemnation notice for this property from the DOT to accommodate nearby bridge expansion. He was awarded $180,000 by the Dickinson County Compensation Commission.

The restaurant was in a prime location to receive business from highway and boat traffic. The restaurant property was zoned commercial and provided dock access and outside eating to accommodate its patrons. Kurth characterized this location as the busiest spot on West Lake Okoboji and the best location for a restaurant. According to trial testimony, there is no other commercially zoned property on West Lake Okoboji that could be used for a restaurant that fronts on the lake similar to the Wharf.

With the proceeds from the condemnation, Kurth bought nearby property on which had once been located a Kentucky Fried Chicken restaurant, no longer in business. Kurth's new property sits on East Lake Okoboji directly on the other side of the bridge from the Wharf. The restaurant is also on the lakefront with a dock and includes several amenities the Wharf did not, such as on-site parking, a newer building, and twice as much land. Kurth testified that he planned to someday open a restaurant on this location.

Kurth was unsatisfied with his condemnation award because he felt it did not take into account the Wharf's business value and location. Accordingly, Kurth sought judicial review of his award from the district court. Prior to trial, the DOT made a motion in limine to exclude evidence describing the business value of the Wharf or providing its past and future profits. The DOT wanted a determination based solely on the value of the land and the structure on it. This was denied, and the case went to jury trial.

Kurth presented the testimony of local real estate experts. Greg Winkel, a certified general real estate appraiser, testified to the worth of the land and the building. This figure was presented as $285,000. Larry Harden, a certified valuation analyst, utilized the "capitalization of earnings method" to place a fair market value on the business and the business property. To produce this number, the expert looked at past earnings to determine what the likely normalized future income would have been given this type of business and its history, location, risk, fixtures, etc. Harden arrived at the amount of $239,952, which he added to the $285,000 valuation for the land and building provided by the earlier expert. He then placed the total value of the Wharf property at $524,952.

Conversely, the DOT's expert real estate appraiser, James Hayes, concluded that the fee was worth only $182,500 by looking at comparable sales. At the conclusion of testimony, over the objection of the DOT, the judge instructed the jury to consider the value of the Wharf property using all competent facts the buyer would factor into his price, including, if relevant, the net income of the business on the property.

The jury returned a verdict for Kurth in the sum of $375,000. The DOT appeals this decision for three reasons: (1) The

court impermissibly allowed the jury to hear evidence of the value of the business; (2) The court erroneously instructed the jury as to what it may consider when valuing the condemned land; and (3) The court improperly overruled the DOT's objection to a letter containing hearsay statements.

## II. Scope and Standard of Review

 The standard of review is in dispute. Ordinarily, the district court's evidentiary and trial objection rulings are reviewed for an abuse of discretion. *State v. Tracy,* 482 N.W.2d 675, 680–81 (Iowa 1992). The DOT argues that when those decisions are based upon an erroneous interpretation of law, our review should be on legal error. *See State v. Kjos,* 524 N.W.2d 195, 196 (Iowa 1994). This is an accurate statement, however, the district court's ruling to allow testimony of the value of the business is not based on any statute or codified rule. Accordingly, we review this determination for an abuse of discretion.

 "An abuse of discretion occurs when the trial court 'exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable.' " *State v. Greene,* 592 N.W.2d 24, 27 (Iowa 1999) (quoting *State v. Smith,* 522 N.W.2d 591, 593 (Iowa 1994)). "[W]e grant the district court wide latitude regarding admissibility" and will reverse only where the losing party was prejudiced by an unreasonable decision. *State v. Sallis,* 574 N.W.2d 15, 16 (Iowa 1998); *accord State v. Caldwell,* 529 N.W.2d 282, 285 (Iowa 1995).

 When review of the district court's instruction to the jury is involved, our review is for correction of errors at law. *City of Dubuque v. Fancher,* 590 N.W.2d 493, 495 (Iowa 1999). "Error in giving . . . a particular instruction does not warrant reversal unless the error is preju-

dicial to the party." *Herbst v. State,* 616 N.W.2d 582, 585 (Iowa 2000). Prejudice is presumed when the jury has been misled by a material misstatement of the law. *Graber v. City of Ankeny,* 616 N.W.2d 633, 642 (Iowa 2000); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.,* 606 N.W.2d 376, 379 (Iowa 2000).

 Generally, hearsay rulings are also reviewed for errors at law. *State v. Ross,* 573 N.W.2d 906, 910 (Iowa 1998) ("In the case of hearsay rulings, our review is for correction of errors at law because admission of hearsay evidence is prejudicial to the nonoffering party unless the contrary is shown."). However, when the basis for admission of hearsay evidence is the expert opinion rule, which provides no hard and fast rule regarding admissibility, we will employ an abuse of discretion standard. *Hutchison v. Am. Family Mut. Ins. Co.,* 514 N.W.2d 882, 889 (Iowa 1994); *Brunner v. Brown,* 480 N.W.2d 33, 37 (Iowa 1992); *see also In re Estate of Kelly,* 558 N.W.2d 719, 722 (Iowa Ct.App.1996) (reviewing trial court's decision to admit hearsay evidence pursuant to expert opinion rule for an abuse of discretion).

## III. Issues on Appeal

The admissibility of testimony and the jury instructions given both stem from the same issue—whether profits can be considered in determining the fair value of land in an eminent domain proceeding. The remaining issue will have us pass judgment on the admissibility of out-of-court statements in support of an expert's testimony.

### A. Business Value Testimony in Eminent Domain Proceedings

What this issue involves is "just compensation." The Iowa Constitution requires

the state to provide just compensation to the owner of land affected by a taking. "Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury...." Iowa Const. art. I, § 18. However, what constitutes just compensation has historically been an elusive question. 26 Am.Jur.2d *Eminent Domain* § 294, at 705 (1996).

The general rule states:

A court may consider all factors indicative of the value of the property, and which would have been present in the minds of a willing buyer and a willing seller, unless the considerations advanced are too speculative or remote, and thus not a necessary, natural, or proximate result of the taking.

*Id.* § 297, at 707–08 (footnotes omitted). This rule has been restated in our cases. "A jury may, of course, consider ... the advantages the land possesses which a seller would press to the attention of a buyer." *Heins v. Iowa State Highway Comm'n*, 185 N.W.2d 804, 807 (Iowa 1971). "When the entire property is taken, our general rule is that the measure of damage is the reasonable market value at the time of condemnation[,] ... [or] what a willing buyer would pay in cash to a willing seller...." *Aladdin, Inc. v. Black Hawk County*, 562 N.W.2d 608, 611–12 (Iowa 1997) (citation omitted).

However, our cases also place a limitation on what type of evidence a jury may hear when making its just compensation determination.

Where condemnation of a fee interest is sought, generally evidence of business profits is inadmissible as an [independent] element of damage or as relevant in determining the value of the land because it is too uncertain and depends upon too many contingencies.

... The fundamental reason for the exclusion of evidence of profits lies in the rule of substantive law that the condemnor takes only the real property, not the business located thereon.

The courts have generally stated that business profits are the result of so many factors and that their repercussion on the market is so remote, that the evidence is more likely to mislead than to aid in the determination of market value.

*Twin–State Eng'g & Chem. Co. v. Iowa State Highway Comm'n*, 197 N.W.2d 575, 578 (Iowa 1972) (citations omitted). "The profits of a business are too uncertain, and depend upon too many contingencies to safely be accepted as any evidence of the [useable] value of the property upon which the business is carried on." *Wilson v. Iowa State Highway Comm'n*, 249 Iowa 994, 1006, 90 N.W.2d 161, 169 (1958) (citation omitted); *accord Comstock v. Iowa State Highway Comm'n*, 254 Iowa 1301, 1308, 121 N.W.2d 205, 209 (1963) (determining that "[a]nticipated profit has too many variables including managerial skill to be" the measure of damages).

Several Iowa cases have recognized that business value may be a relevant factor when the property condemned is a *leasehold*. *See Twin–State Eng'g*, 197 N.W.2d at 582.

[W]e conclude such evidence as to the nature and prosperity of plaintiff's business was a proper item to be considered along with all facts, circumstances and elements disclosed by the evidence as tending to establish the reasonable value of the *lease* at the time it was taken. The evidence tended to be descriptive of the injury resulting to the *leasehold* by condemnation.

*Id.* (emphasis added).

When the state condemns the fee, however, our court has clearly recognized:

"This court has, following the traditional rule, not allowed evidence concerning profits when only the fee is being condemned." *City of Des Moines v. McCune*, 487 N.W.2d 83, 84 (Iowa 1992). In *McCune*, we upheld the district court's rejection of evidence as to the "going-concern value" of a business on land condemned by the city. *Id.* In another case, we held that the district court's failure to sustain an objection made to testimony of profits and revenue of a business on the condemned property was an abuse of discretion. *Wilson*, 249 Iowa at 1006–07, 90 N.W.2d at 169. "[T]he profits of a business conducted upon land taken for the public use is *not admissible* in proceedings for the determination of compensation which the owner of the land shall receive." *Id.* at 1006, 90 N.W.2d at 169 (emphasis added) (citation omitted). The only exceptions we have recognized to this rule are leaseholds and land used for agricultural purposes. *McCune*, 487 N.W.2d at 84; *Wilson*, 249 Iowa at 1006–07, 90 N.W.2d at 169.

When the entire fee is condemned, the usual guide to the fair market value of the property is comparable sales figures. *See Crozier v. Iowa–Ill. Gas & Elec. Co.*, 165 N.W.2d 833, 835 (Iowa 1969). This approach was utilized by the DOT's expert to arrive at his valuation of $182,500. Another approach that is employed is the cost approach, which looks at how much it would cost to build an identical building on identical land, depreciated by age. This approach was partially used by Kurth's expert, Winkel, who valued the land and building at $285,000. Kurth's second expert, Harden, then added that figure to a figure he arrived at using the capitalization of earnings approach. Kurth claims this method did not unduly consider business profits or the value of the business. We find that it did.

Harden explained that he was hired by Kurth to perform a business valuation. He informed the jury that he was valuing the business and the business property, which included tangibles like furniture and equipment and also intangibles like good will, the business name, and location. Specifically in this case, Harden was trying to determine how much the Wharf, operating as a restaurant, was worth. His method was meant to provide a figure to inform a buyer what he could expect to make if he was operating a similar business on the property. He arrived at this figure by looking at the "income stream" of the Wharf from 1994 through 1997. He admitted that he added estimated profits for the year of 1997 to his equation, which were not accounted for because the Wharf had to close earlier in the season than normal. He referred to the profits realized in the four years adjusted by the risk of business and other business assets as the normalized net income. Once this figure was determined, he stated the next step was "to anticipate what my future income from this property would be." Harden used the normalized past income to predict the normalized future income. This number was then capitalized by a flat rate resulting in a figure of $239,952. Harden characterized this as the commercial value of the property. On cross-examination, he admitted that his figure was partially based on past profits of the Wharf. When asked, "And that value under your method of analysis is based on the profits of the Wharf. . . . Right?" Harden replied, "That's the way the capitalization of earnings method is used. You use expected future earnings."

Certainly, evidence that the land is being used as a restaurant is highly relevant to the value of the land. *See Olson v. United States*, 292 U.S. 246, 256, 54 S.Ct. 704, 709, 78 L.Ed. 1236, 1245

(1934). However, specific dollar figures as to how much profit the Wharf had made, as well as specific dollar figures guessing what it could make in the future are far too speculative and may not be provided to a jury in a fee condemnation proceeding. *See McCune*, 487 N.W.2d at 84. Accordingly, this information was inadmissible. Although we recognize that the capitalization of earnings method is a reliable formula for determining the value of a business, it is not a valid method for assessing just compensation in fee condemnation cases.

When inadmissible evidence is heard by the jury, the district court has abused its discretion. Whether this is grounds for a reversal depends upon our view of prejudice in these circumstances. In the context of eminent domain proceedings, we have said: "[W]here error appears in the admission of testimony prejudice will be presumed unless the contrary affirmatively appears." *Steensland v. Iowa-Ill. Gas & Elec. Co.*, 242 Iowa 534, 540, 47 N.W.2d 162, 165 (1951). There is no prejudice when, "notwithstanding the illegal evidence, the competent evidence is such that the prevailing party is entitled to the verdict as a matter of law as being the only proper verdict that could be rendered." *Id.* at 541, 47 N.W.2d at 165–66.

Because no figure for the real estate alone, untainted by business profits, exceeds $285,000,[1] the jury clearly was persuaded by Harden's business value figure and compensated for it in its $375,000 verdict. *See Stom v. City of Council Bluffs*, 189 N.W.2d 522, 530 (Iowa 1971); *see also* 27 Am.Jur.2d *Eminent Domain* § 676, at 216 (1996) ("[T]he condemnation verdict or award cannot be higher than the highest estimate of the expert witnesses nor lower than the lowest."). As such, we cannot say that had this evidence been absent from trial, the jury would have arrived at the same verdict.[2]

B. Jury Instructions for Arriving at the Condemned Land's Value

When giving instructions to the jury, "the court must correctly state the law and confine it to [the facts]. A misstatement of the law in an instruction to a jury is reversible error." *Heldenbrand v. Executive Council*, 218 N.W.2d 628, 637 (Iowa 1974). "[T]he jury should not be informed of any matter which is not proper for it to consider in arriving at its verdict." 27 Am.Jur.2d *Eminent Domain* § 628, at 175. The DOT takes issue with three jury instructions.

1. We recognize that this figure does not include the plaintiff's value for all his restaurant equipment. Most of the equipment's value was subsumed in Harden's approach, which we have already determined improperly factored in past and future profits. The value assessed to the equipment under this approach is not separable, making it impossible for us to speculate how much Winkel's figure might be elevated if he had valued the remaining equipment. However, given the DOT's uncontested valuation of the equipment at $33,000, we are confident that this adjustment to the $285,000 figure would never exceed $375,000, nor convince us that Kurth would have been entitled to this amount as a matter of law.

2. The DOT's expert also briefly testified as to the Wharf's income for 1995 with a specific dollar amount to arrive at a valuation of $181,000 using the income valuation approach. This figure was then rejected by the same expert in favor of the comparable sales approach which provided a higher value for Kurth's land. This reference to the 1995 income by the DOT does not waive the argument the DOT is now making on appeal. Because this figure was discarded by the DOT's expert, the prejudice suffered by the plaintiff's expansive use of past profit figures was not mitigated.

### 1. Jury Instruction No. 1

 The relevant language of this instruction with the disputed portion emphasized reads:

It is undisputed that on August 5, 1997 the Iowa Department of Transportation condemned and on October 7, 1997 took possession of the *complete property* owned by Jerry Kurth *d/b/a Fisherman's Wharf Restaurant.*

Because the jury should not have heard evidence that equated the value of the business as property, the DOT argues that "complete property" is too broad. Literally, the complete property was taken, *i.e.,* the land and the building which was a restaurant. The State condemned the entire fee. Nonetheless, we recognize that such a phrase may fail to distinguish that the government is not also taking the business. To minimize confusion in the future as to what the government is taking, the term "complete property" should not be used.

### 2. Jury Instruction No. 13, paragraphs 10 and 11.

The relevant language of this instruction with the disputed portion emphasized reads:

Factors you may consider in determining the fair and reasonable market value of the property are:

. . .

10. All competent facts which an owner would properly and naturally press upon the attention of a buyer with whom he is negotiating a sale of the property.

11. All competent facts which would naturally influence a person of ordinary prudence desiring to purchase the property.

This instruction is almost verbatim from *Van Horn v. Iowa Public Service Co.,* 182 N.W.2d 365, 371 (Iowa 1970) and earlier from *Korf v. Fleming,* 239 Iowa 501, 517–18, 32 N.W.2d 85, 94–95 (1948). As such, it is an accurate statement of the law. The dispute with Instruction 13 comes from the fact that the jury heard inadmissible evidence that it may have been able to incorporate in this instruction. Inadmissible evidence and a later instruction may have had an impermissible effect on this instruction.

### 3. Jury Instruction No. 17

The relevant language of this instruction with the disputed portion emphasized reads:

There is evidence in this case as to certain *net income derived from Plaintiff's operation of the Fisherman's Wharf Restaurant* in the past. You are instructed that you are not to use such evidence as the measure of Plaintiff's damages, but *you may consider such evidence* only to the extent that you find that it does provide support, if any, for the estimates given herein as the fair market value of the property on August 5, 1997.

This is an accurate statement of the law in leasehold condemnation proceedings in Iowa. *See Twin–State Eng'g,* 197 N.W.2d at 578–82. However, what was condemned here was a fee, not a leasehold. First, the jury should never have been provided figures of net income. And second, allowing the jury to consider these figures for any purpose is a misstatement of the law in fee condemnation proceedings. *See McCune,* 487 N.W.2d at 84.

 "In determining whether the jury was misdirected upon the measure of damages, all instructions will be read and considered together. . . ." 27 Am.Jur.2d *Eminent Domain* § 636, at 179. Instruction 17 clearly tainted the other instructions given and allowed the jury to consider

inadmissible evidence. Reading all these instructions together, because of the instruction allowing the jury to consider net income, the court's instructions were improper and the error justifies a new trial.

### C. Admission of a Letter Compiled by Out of Court Experts

Finally, a letter relied upon by two experts for Kurth was admitted into evidence. The DOT objects to its admission as hearsay. This letter was signed by five local real estate experts, only one of whom testified at the trial. Gary Carlson, the realtor who testified, compiled the letter, signed it, and obtained the signatures approving its content from four other local realtors. The letter was first referenced when Kurth's value expert, Greg Winkel, relied on statements made in this letter to form his value estimate of the real estate. The DOT made no objection to this testimony. The letter was not offered into evidence at this time.

Following Winkel's testimony, realtor Carlson also based his testimony on figures found in the letter with no objection. The letter was later offered into evidence. It was then that the DOT objected to it as hearsay. Kurth argues that this letter is admissible under Iowa Rule of Evidence 705. Rule 705 reads:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Iowa R. Evid. 705. This Rule specifically recognizes that an expert often relies on out-of-court statements or hearsay to form his opinion. Iowa Rule of Evidence 703 also acknowledges this point.

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Iowa R. Evid. 703. The value expert, Winkel, established that it is typical for him to rely on the recommendations of local realtors when arriving at a value estimate.

 ██ Although Rules 703 and 705 are silent as to whether this hearsay evidence is admissible, we are persuaded by the federal committee notes relating to similar federal rules. We have recognized: "According to the federal advisory committee, it was the intent of federal rule 705 to *permit the introduction* of 'underlying facts or data' necessary to the expert's opinion." *Brunner*, 480 N.W.2d at 35 (emphasis added).

> "[C]ourts and rule makers have yielded to the pressures of expediency so as to recognize a relaxation of the exclusion of otherwise inadmissible hearsay, to the extent that it may be considered as a part of the witness's legitimate cumulation of knowledge if the hearsay information is of that sort as is customarily relied upon by experts in the practice of their profession. The sanction of the general experience and reliability of the expert to sort out the acceptable information upon which he relies, from the unacceptable, is considered an adequate safeguard."

*Id.* at 35–36 (alteration in original) (citation omitted). Accordingly, admission of this letter may be characterized as "an indirect exception to the hearsay rule." *Id.* at 35 (citation omitted). As long as the expert can establish that this is the type of evidence reasonably relied upon by experts in his field, it should be admissible. As noted

above, Winkel did testify that it is typical for him to consult local realtors' data.

Further, there is another basis for admission of this letter. Because figures found in the letter came in without objection, admission of the letter was chiefly cumulative. *See City of Dubuque*, 590 N.W.2d at 496; *see also State v. McKettrick*, 480 N.W.2d 52, 60 (Iowa 1992) (holding "prejudice will not be found where substantially the same evidence is in the record without objection"). Given the legal support for admission of hearsay evidence in expert situations, introduction of this evidence was not an abuse of discretion.

In summary, the district court did not abuse its discretion by allowing the hearsay letter into evidence. However, the district court allowed the jury to hear inadmissible evidence. This was an abuse of discretion, and the DOT was prejudiced by this abuse. Finally, the jury was not properly instructed on the law and was allowed to factor inadmissible evidence into its verdict. For these reasons, the jury's decision must be reversed.

**REVERSED AND REMANDED.**