## IN THE COURT OF APPEALS OF IOWA

No. 17-0654
Filed April 18, 2018

**G-FORCE HAULING, L.L.C.,**
    Plaintiff-Appellee,

**vs.**

**DAVID ERICKSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Susan K. Christensen, Judge.

The defendant appeals from the judgment entered against him for tortious interference with a contract. **REVERSED AND REMANDED.**

Lloyd R. Bergantzel, Council Bluffs, for appellant.

Mark A. Simons of Simons Law Firm, P.L.C., West Des Moines, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

David Erickson appeals from the judgment entered against him for tortious interference with a contract after a trial to the court. Erickson challenges some of the district court's evidentiary rulings and the court's determination that he intentionally interfered with the contract between plaintiff G-Force Hauling, L.L.C. (G-Force) and Menards, Inc.. Erickson also argues G-Force failed to mitigate its damages and asks for an award of appellate attorney fees.

**I. Background Facts and Procedure.**

On April 18, 2011, Kevin Gowens, through his business G-Force, entered into a contract with Menards to deliver goods purchased from the Menards store located in Council Bluffs to Menards's customers. G-Force signed a new contract each calendar year it continued to make deliveries for Menards, including a contract for the year of 2013. G-Force did not sign a contract for 2014.

Under the contract, G-Force received compensation based on mileage and handling charges and was eligible two bonus payments. The bonus payments included a "delivery bonus" and a "retention bonus." The delivery bonus equaled one half of one percent of the net sales price of merchandise G-Force delivered and was paid periodically, as the deliveries were invoiced. The retention bonus also equaled one half of one percent of the net sales price of the merchandise G-Force delivered, and it was paid in the February following the delivery year for all deliveries made between January 1 and December 31 but only if the hauler made deliveries for Menards through December 31 of the preceding year. G-Force received the retention bonus for each year it contracted with Menards except for the 2013 contract year.

On August 24, 2013, Erickson began working for G-Force. Erickson made deliveries for G-Force under G-Force's contract with Menards; he made his last delivery for G-Force in November 2013. During the time he worked for G-Force, Erickson and Gowens discussed the hauling contract between G-Force and Menards. Specifically, the two discussed the details of the retention bonus.

During 2013, to make deliveries, G-Force utilized a semi-truck with a Moffett (a truck-mounted forklift), which was attached to the trailer of the semi-truck with chains. The Moffett was used to load and unload the truck. Specifically fit chains were necessary to secure the Moffett to the semi. This was the only vehicle G-Force had registered with the department of transportation (DOT) to make commercial deliveries.

Sometime before December 15, 2013, G-Force's Moffett ceased functioning. In order to continue making deliveries, G-Force rented a Moffett from Heartland Transport; G-Force continued to use its own truck and trailer with the rented Moffett, and it attached the rented Moffett to the trailer using its own chains, which were bolted to its trailer.

On December 15, Erickson purchased from Heartland Transport a flatbed semi-trailer and a Moffett (the same one G-Force had been renting) with all accessories (including chains and restraints). The next day, Erickson went to the Council Bluff Menards—where G-Force kept its truck—and removed the purchased Moffett from G-Force's trailer. Erickson also removed the chains attached to G-Force's trailer.

Once Gowens realized Erickson removed the chains, he attempted to contact Erickson several times. Erickson never responded. Gowens then

attempted to obtain new chains, but he could not find any to purchase locally and when he tried to order a set, he learned they would not arrive for at least two weeks. Gowens testified G-Force could not make any deliveries without the chains because he had no other way to secure his Moffett and he had no other vehicles that were registered to make commercial deliveries. G-Force did not make any deliveries for Menards from December 16 to December 31, 2013.

Menards refused to pay G-Force its 2013 retention bonus because it failed to make deliveries for the entire calendar year. The manager of the Menards store agreed G-Force's retention bonus for 2013 would have totaled $25,518.61.

G-Force filed a breach-of-contract suit against Menards and a claim against Erickson for tortious interference with its contract with Menards. After being forced to arbitration with Menards, Menards paid G-Force $12,000 in a settlement and was released from the lawsuit. Gowens testified G-Force was seeking the rest of the amount of the unpaid retention bonus from Erickson as damages.

After a bench trial, the district court found in G-Force's favor, entering judgment against Erickson for $13,518. Erickson appeals.

**II. Standard of Review.**

Although Erickson maintains G-Force's action against him was in equity, G-Force filed its action at law. *See Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). Additionally, the district court ruled on evidentiary objections during trial and ultimately issued a judgment. *Id.* (noting, as a "litmus test," that actions are at law when evidentiary objections are ruled on by the trial court and trial courts generally issue judgments in a legal action).

We review law actions for correction of errors at law. Iowa R. App. P. 6.907. The district court's findings of fact are binding on us if they are supported by substantial evidence. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). "Under this standard, we view the evidence in a light most favorable to upholding the district court's judgment." *Data Documents, Inc. v. Pottawattamie Cty.*, 604 N.W.2d 611, 615 (Iowa 2000).

## III. Discussion.

Erickson maintains the district court erred in admitting statements from a third party and a police report into evidence. Generally, we review the district court's evidentiary and trial objection rulings for an abuse of discretion. *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001). However, we review hearsay rulings for errors at law. *Id.*

First, Erickson claims the district court erred when, over his objection, Gowen was allowed to testify as to the statements of a third party as follows:

> Q. Now, what happened then on or about December 15, 16 of 2013? A. On the—Okay, so I receive a phone call that "Dave Erickson has come and removed the Moffett from your trailer." No big deal. That's fine because if he bought it or whatever. But they said that "the problem is he took your chains too." So when I go—

The court asked G-Force's attorney if the statement "was going to the truth of the matter asserted," and counsel responded, "Well, I'm more asking him did he get a phone call and what was the phone call in regards to that prompted him to go--." The court then overruled the objection.

While the third-party statements Gowen testified about would typically be hearsay, here they were offered for the non-hearsay purpose of explaining the actions Gowen took next. "[A] statement that would ordinarily be deemed hearsay

is admissible if it is offered for a non-hearsay purpose that does not depend upon the truth of the facts presented." *McElroy v. State*, 637 N.W.2d 488, 501 (Iowa 2001). "For example, the statement may be offered simply to demonstrate it was made, to explain subsequent actions by the listener, or to show notice to or knowledge of the listener." *Id.* It is the role of the court to "determine if the party's true purpose in offering the evidence was in fact to prove the statement's truth." *Id.* at 502. As the district court did, we conclude the evidence was actually offered to explain Gowen's actions. Thus, the district court did not err in admitting the third-party statements.

Next, Erickson maintains the district court erred when it admitted the police report, which was created after Gowen reported Erickson for stealing his chains, because the report included hearsay statements from several individuals, including a statement from Jacob McCloud, a Menards employee, that he told Erickson the chains belonged to G-Force—not Heartland Transport—at the time Erickson removed them with the Moffett.

The court allowed G-Force's counsel to read a statement from the report when questioning Erickson, initially stating it was allowed for "impeachment." Over Erickson's objection, G-Force was allowed to ask Erickson the following:

> Direct your attention to page 3 [of the police report], and there's a highlighted paragraph, I then make—be the second to last, "McCloud stated that he informed Erickson that the chains belonged to Gowens and that the chains had never been switched out, just the [Moffetts]." Do you recall any individual saying that to you?

But those statements were not the prior statements of Erickson and thus cannot be used to impeach him. "[T]he foundational basis for admissibility of an out-of-court statement *as impeachment* is a contradictory statement by the declarant at

trial." *Brooks v. Holtz*, 661 N.W.2d 526, 531 (Iowa 2003); *see also Bauer v. Cole*, 467 N.W.2d 221, 225 (Iowa 1991) ("[A] previous statement of a witness cannot be used for impeachment unless the present testimony is at material variance with the prior statement."); *State v. Oshinbanjo*, 361 N.W.2d 318, 322 (Iowa 1984) (noting the proper foundation must be laid before a prior inconsistent statement is admitted, including alerting the witness "to the nature of the prior statement or time and place of its making" and giving "the witness an opportunity to admit or deny making the statement"). Moreover, by qualifying the statement as "impeachment," the court presumed it was true for the matter it asserted—that Erickson was notified the chains he was taking did not belong to him.

A few questions later, G-Force attempted to again read directly from the police report, and Erickson objected, stating, "Reading from a document that's not been accepted into evidence is full of hearsay." G-Force responded that it would offer the police report as an exhibit because "it's impeachment as well." The court admitted the report after discussing Erickson's objection regarding relevancy but did not explicitly rule on the hearsay objection.

The report should not have been admitted, as it was hearsay and does not fall within the public-records exception to the hearsay rule. *See* Iowa R. Evid. 5.803(8)(b)(i); *see also State v. Reitenbaugh*, 392 N.W.2d 486, 489–90 (Iowa 1986). We presume prejudice when hearsay is improperly admitted unless the contrary is affirmatively established. *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986).

G-Force urges us to find that the admission of the report and the indication that McCloud told Erickson the chains belonged to G-Force as Erickson was

removing them was not prejudicial because the court "relied on the same not as proof of who actually owned the chains but rather primarily to conclude that Erickson was on notice" G-Force claimed it owned them. But the court's conclusion that Erickson was "on notice" was central to its determination that Erickson's actions of removing the chains amounted to "intentional and improper interference with the contract"—a necessary element of finding tortious interference with G-Force's hauling contract. *See Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001) (providing the elements of intentional interference with a contract). In reaching its conclusion as to the element, the court stated:

> [Erickson's] conduct was done without any notice to [G-Force]. [Erickson] testified that he did not think it necessary to contact [G-Force] before or after removing the chains, even after being told by Jacob McCloud that the chains belonged to [G-Force] and should be left attached to the vehicle. [Erickson] asserted that he had a legal right to the chains because they were included in the sales receipt. However, the chains attached to [G-Force's] truck did not belong to Heartland Transport and were not sold to [Erickson]. [Erickson] was made aware that the chains belonged to [G-Force], but did not attempt to contact [G-Force] in order to sort out who they belonged to.

Here, the hearsay evidence at issue is at the heart of this matter, so we cannot say the absence of prejudice has been affirmatively shown. *See Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 184 (Iowa 2004) (determining the inadmissible hearsay evidence "cannot fairly be characterized as nonprejudicial" because the "evidence directly addressed th[e] central issue"). Therefore, we reverse and remand for new trial.[1] *Id.*

---

[1] Because we remand for new trial, we need not decide Erickson's claims regarding whether G-Force mitigated its damages or the elements of tortious interference were met.

Erickson asks that we award him "reasonable attorney fees." Generally, attorney fees are not allowed unless authorized by a statute or contract. *W.P. Barber Lumber Co. v. Celania*, 674 N.W.2d 62, 66 (Iowa 2003). Erickson has neither sued on a contract nor provided a statute that he believes authorizes the award of attorney fees in this case. Thus, we do not consider this issue further, and we do not award any fees.

**REVERSED AND REMANDED.**