# IN THE COURT OF APPEALS OF IOWA

No. 18-0850
Filed September 25, 2019


**EDWARD FRANZEN,**
    Plaintiff-Appellee,

**vs.**

**ALAN W. KRUGER and WEST UNION DENTAL ASSOCIATES,**
    Defendants-Appellants.
_____


Appeal from the Iowa District Court for Fayette County, John C. Bauercamper, Judge.


A dentist appeals post-trial rulings following a jury verdict for his patient in a malpractice action. **REVERSED AND REMANDED.**


Thomas F. Ochs and Raymond R. Stefani II of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for appellants.

Jeffrey R. Tronvold of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for appellee.


Heard by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Edward Franzen brought a malpractice suit against Dr. Alan Kruger and his practice, West Union Dental Associates. A jury found Dr. Kruger breached the standard of care while extracting Franzen's tooth, causing Franzen to aspirate a surgical bur and eventually lose part of his lung. The damage award totaled $400,000. Dr. Kruger challenges rulings on several post-verdict motions.

In this appeal, we focus on the admission of hearsay evidence during the testimony of Franzen's expert witness. Because the district court did not require Franzen to lay a proper foundation for offering survey responses used to bolster his expert's standard-of-care opinion, we reverse and remand for a new trial.

I.      **Facts and Prior Proceedings**

Franzen raises cattle and corn on his family's farm in Fayette County. In 2014, Franzen experienced pain from an abscessed tooth. Because his previous dentist had retired and West Union was close to his farm, Franzen called Dr. Kruger's office for an appointment.

After taking x-rays, Dr. Kruger discovered Franzen had a cracked molar.[1] The dentist believed the best option was extraction. Because the molar sat close to Franzen's sinuses, the dentist used a resection method. That method required Dr. Kruger to chop the tooth into three parts for removal by operating a drill-like handpiece. Before starting the resection, the dentist inserted a surgical bur into the handpiece. The bur—like a drill bit[2]—spins to function as a rotary cutting

---

[1] The tooth at issue was number fourteen, the upper left first molar. Before starting the extraction, Dr. Kruger removed amalgam from an old filling inside that molar.
[2] According to expert testimony, "A dental bur is basically a drill bit that you might have for an electric drill at home, and like a drill bit at home, it has a symmetry to it. When you

instrument. During the third step of the resection, Franzen felt something hit the back of his throat. He started to cough and gag. Dr. Kruger stopped the handpiece and looked for the bur. He couldn't find it.

After finishing the tooth extraction, Dr. Kruger recommended Franzen have his lungs checked in case the missing surgical bur had lodged there.[3] Two x-rays and a CT scan later, doctors confirmed a two-and-one-half centimeter metallic foreign object had drifted deep into the right lower lobe of Franzen's lung.

A surgeon advised Franzen of the risks of leaving the bur in his lung. Those risks included progressing disease, recurrent infections, pneumonia, and lung collapse. Franzen decided to have the surgery after harvest season. Surgeons removed the right lower lobe of his lung. As it turned out, the bur was not in that lobe. But surgeons used a bronchoscope to remove the bur from its migrated location further inside the lung.

Franzen recovered from the surgery in about a month. But he testified his work as a farmer is now harder. For example, he "runs out of wind" when trying to catch calves to vaccinate them. He has to slow down and take more breaks to catch his breath when doing chores or hunting. And he cannot hold a note as long when singing in his church choir. His lung capacity measured on "the low side of normal."

---

look, there is going to be the long part that fits in that you would tighten down at home with your chuck. And in this case we pushed down, and we set this drill bit, but we call it a dental bur because it sounds politically more correct than saying drill bit."

[3] Dr. Kruger originally wrote in Franzen's records: "While sectioning the tooth the surgical bur fell out of the handpiece and fell down the patient's throat and he swallowed it." After checking the handpiece later, the dentist changed his belief, testifying "the bur could not have fallen out."

In 2016, Franzen sued Dr. Kruger and West Union Dental Associates for malpractice.  After a six-day trial, a jury found Dr. Kruger was negligent and his negligence harmed Franzen.  The jury awarded $400,000 in damages, including $320,000 in future damages.

After the jury returned this verdict, Dr. Kruger moved for a new trial and for judgment notwithstanding the verdict (JNOV).  He also argued the verdict was excessive and asked for a new trial conditioned on Franzen accepting a remittitur of the amount of future damages.  The district court denied those post-verdict motions.  Dr. Kruger now appeals.

On appeal he raises four issues:

(1)     The district court should have granted a new trial based on the improper testimony of Franzen's expert, dentist Cheri Lewis, on the standard of care.  Dr. Kruger complains that Dr. Lewis relied on impermissible hearsay when she testified she conducted a survey of oral-surgery program directors about the use of "bite blocks" and gauze "throat packs" to protect patients during extractions.

(2)     The district court should have granted a new trial because the damages were excessive and without support in the record.

(3)     The district court should have granted JNOV because Dr. Lewis did not properly define the standard of care or show that Dr. Kruger breached the standard.

(4)     The district court abused its discretion in denying Dr. Kruger's alternative motion for a conditional new trial.

Because we find the first issue dispositive, we need not address his remaining claims.

## II.     Scope and Standard of Review

Iowa Rule of Civil Procedure 1.1004 governs motions for new trial.  That rule sets out nine possible grounds available to an aggrieved party when an error

has "materially affected movant's substantial rights." Iowa R. Civ. P. 1.1004. Our standard of review for a new-trial ruling depends on the grounds raised in that motion. *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) (citation omitted). If the motion hinged on a discretionary ground, we review for an abuse of discretion. *Id.* If the motion raised a legal question, we review for legal error. *Id.*

In his post-trial motion, Dr. Kruger alleged an error of law occurred in the proceedings. *See* Iowa R. Civ. P. 1.1004(8). The alleged error was allowing Franzen's expert, Dr. Cheri Lewis, to offer hearsay in the form of responses to a survey she sent to oral surgeons at various dental institutions across the country. Generally, we review hearsay rulings for legal error. *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001). But when the district court admits hearsay evidence because the expert witness relied on it in giving an opinion to the jury, "we will employ an abuse of discretion standard." *Id.* An abuse occurs when the district court exercises its discretion on clearly untenable grounds or to a clearly unreasonable extent. *Id.* We give wide latitude to the district court on issues of admissibility. *Id.* We will reverse only if the aggrieved party was prejudiced by an unreasonable decision. *Id.*

## III.    Analysis

Before we tackle Dr. Kruger's evidentiary issue, we first address Franzen's contention that we may affirm the jury's verdict based on a ground of negligence not affected by the expert witness testimony.

The district court instructed the jury that Franzen had to prove Dr. Kruger was negligent in one or more of these ways:

a. Failing to properly secure the dental bur before tooth extraction;

b. Failing to utilize a bite block while performing the tooth extraction; or

c. Failing to utilize a throat pack or moist gauze while performing the tooth extraction.

Franzen's counsel foreshadowed the second and third alternatives in his opening statement, introducing the terms "bite block" and "throat pack"[4] to the jury:

> Now, it's okay for a general dentist to extract a tooth, but when they do it, they have to do it with the care, the precision, and the safety of an oral surgeon. What the schools are teaching in America now is that you insert a bite block and have a throat pack or some type of gauze in the back of your throat so that foreign objects can't go down into your stomach or your lungs. That did not happen in this case. Nothing was used.

As for the first ground for negligence, Franzen's counsel elicited this testimony from Dr. Lewis: "The most likely scenario is that the bur was not properly seated, and with use, it started—it just spun out." The plaintiff hammered that point in closing arguments:

> If you can get—the simple explanation, they didn't set the bur. It spun out. Just like Dr. Lewis thought, and that's what I believed since day one when I saw this. The bur was not in there right. It's just not seated. The way they do it, he pushes it in, says, yup, that's 13 millimeters.[5] It feels like it's in and that's 13 millimeters. He does not make sure it's in. Dr. Kruger's post-verdict motions focus on the second and third negligence questions: the failure to shield the patient's throat from unexpected debris. Franzen argues because Dr. Kruger does not seriously contest the first specification of negligence "it is unnecessary to address Dr. Kruger's remaining arguments as they relate to liability and standard of care." We disagree. Here, the jurors returned a general verdict without specifying the ground or grounds of fault. As a result, we must order a new trial if an evidentiary error caused prejudice under any of the alternative theories. *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d

---

[4] Defense expert Steve Karbaka described a bite block as a rubber apparatus that can help patients keep their mouth open during a procedure. He also explained that a throat pack involves burying a piece of gauze in the back of the patient's throat during a procedure to prevent material from going down their windpipe.

[5] Dr. Kruger testified, "[I]f we're dealing with a surgical bur, we know 12 millimeters goes in and 13 sticks out."

699, 710 (Iowa 2016); *see also Childers v. McGee*, 306 N.W.2d 778, 780 (Iowa 1981). Unable to take Franzen's proposed shortcut, we turn to Dr. Kruger's claim concerning the standard-of-care evidence.

Dr. Kruger believes he is entitled to a new trial based on the admission of hearsay evidence during the testimony of Dr. Lewis, Franzen's expert on the standard of care. Dr. Lewis is a general dentist who practices in Beverly Hills, California. Before she took the stand, Dr. Kruger sought to prevent her from discussing a survey she sent to directors of oral-surgery programs around the country.[6] In the survey, Dr. Lewis aimed to confirm "the protocol taught in [their] graduate oral surgery program related to the extraction of a maxillary molar under a local anesthetic."[7]

Outside the presence of the jury, Franzen's attorney argued the survey results could form of the basis of Dr. Lewis's opinion on the standard of care under Iowa Rule of Evidence 5.703, which describes the acceptable bases for expert opinion:

> An expert may base an opinion on facts and data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Plaintiff's counsel further explained:

> She has contacted over 50 or 60 universities, over 30 have responded, about the standard of care taught at the time of Ed Franzen's extraction through today, what that standard of care is for

---

[6] At trial, Dr. Kruger first argued Dr. Lewis was not qualified to render a standard-of-care opinion on adult tooth extractions because she practiced standard dentistry and not oral surgery.

[7] In her deposition, Dr. Lewis quoted the survey question: "I'm interested in confirming the protocol taught in your graduate oral surgery program related to the extraction of a maxillary molar under a local anesthetic." She then listed four procedures. "One, local anesthetic; two, placing mouth prop; three, placing throat pack; four, proceed with extraction. . . . agree with above or disagree."

oral surgery. She did that because she knew herself in California you need a bite block and a throat pack or some type of device to protect a patient from aspirating.

It was confirmed with over 30 universities that that is the standard of care that has been and is currently being taught in the United States of America, and it's been taught at the University of Iowa since before 2012. And that is information that she's gleaned in her practice. She reasonably relied upon and confirmed it, not only is it the standard that she has been taught about and is the reason why she doesn't do as many extractions, but confirmed that it is a national standard.

Defense counsel then lodged a hearsay objection. He complained, "None of these institutions or any individuals have been identified to the defendants as expert witnesses upon whom she should have relied or can rely for her opinions." Defense counsel bemoaned his inability "to cross examine anybody who has responded to this survey." He added the survey project "lacks any credibility as far as another expert witness upon whom she relied for her opinions in this case."[8]

The district court overruled Dr. Kruger's objections to Dr. Lewis's ability to testify about the standard of care for the oral surgery performed on Franzen. When Franzen's attorney sought to clarify if the court would allow Dr. Lewis to testify about her survey project, the court responded "yes" without further elaboration. The defense renewed his objection to Dr. Lewis discussing the surveys during her direct testimony and again when moving for a new trial.

On appeal, Dr. Kruger argues the district court abused its discretion in denying his motion for new trial. The propriety of the court's admission of the evidence hinges on Franzen's compliance with rule 5.703. That rule lets an expert witness give opinions based on "facts and data" not admissible in evidence—in

---

[8] Franzen's counsel responded that the defense had access to survey responses but opted not to follow up.

other words, hearsay. *See Estate of Kelly*, 558 N.W.2d 719, 721 (Iowa Ct. App. 1996).

But rule 5.703 "does not automatically permit hearsay evidence to be admitted at trial simply because an expert is testifying." *C.S.I. Chem. Sales, Inc. v. Mapco Gas Prods, Inc.*, 557 N.W.2d 528, 531 (Iowa Ct. App. 1996). The rule "is limited to 'facts or data' that could be 'reasonably relied upon.'" *In re Detention of Stenzel*, 827 N.W.2d 690, 706 (Iowa 2013). In that vein, the rule is "intended to give experts appropriate latitude to conduct their work, not to enable parties to shoehorn otherwise inadmissible evidence into the case." *Id.* at 704.

Missing in Franzen's case was the necessary foundation for the expert's reliance on the survey responses. Significantly, Dr. Lewis never testified that the facts and data derived from those surveys were "of a type reasonably relied upon by experts" in her field in determining the standard of care. Because that foundation was missing, the hearsay evidence was not admissible under rule 5.703. *See State v. Neiderbach*, 837 N.W.2d 180, 205 (Iowa 2013).

When asked at oral argument to pinpoint where he established the necessary foundation, Franzen's counsel quoted Dr. Lewis's testimony: "I believe that (use of a bite block and gauze and/or a throat pack) to be the standard of care, and I spoke with oral surgeon friends of mine, and they stated that was the standard, but I recognize that I'm in California."

For three reasons, that answer did not provide adequate foundation to allow Dr. Lewis to testify about the survey results. First, defense counsel objected to her standard-of-care response on hearsay and foundation grounds. The court responded: "Sustained. New question."

Second, even if that answer remained before the jury, rule 5.703 "does not empower one expert witness to state other experts also subscribe to the witness's stated conclusion." *State v. Barrett*, 445 N.W.2d 749, 751 (Iowa 1989); *see Brunner v. Brown*, 480 N.W.2d 33, 37 (Iowa 1992) (restating *Barrett* holding as "an expert witness's bare statement that other experts agreed with him did not establish that such opinions were reasonably relied on by experts in that field").[9] In *Barrett*, the court found additional foundational testimony would be required "to show that the opinion of [the expert's] colleagues was the type of 'facts or data' reasonably relied upon by experts" in the field in reaching their conclusions. *Barrett*, 445 N.W.2d at 751.

Third, and further outside *Barrett's* boundaries, the district court did not limit Dr. Lewis to relaying her conversations with "oral surgeon friends." Instead, Dr. Lewis had free rein to discuss the survey responses she received from a nationwide sampling of oral-surgery programs.[10]

Dr. Kruger likens Dr. Lewis's discussion of those survey results to the improper admission of questionnaires in *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168 (Iowa 2004). In that nuisance case, the district court allowed medical experts to testify they reviewed questionnaires distributed to neighbors in formulating their opinion that odors emitted from a hog confinement facility caused breathing

---

[9] Our court has recognized a distinction between introducing information from "a nontestifying expert as a basis for an opinion and the use of such information to corroborate the opinion." *C.S.I. Chem. Sales, Inc.*, 557 N.W.2d at 531("Corroboration might reinforce an expert's confidence in an opinion, but does not serve as a basis for the opinion.").

[10] Dr. Lewis said she sent out about one-hundred questionnaires and was satisfied with the response rate—receiving data from about thirty-six program directors across the United States. In general, the survey responses agreed with her proposed protocol of using a "mouth prop" and "throat pack" when extracting a molar under a local anesthetic.

problems. *Gacke*, 684 N.W.2d at 183. The supreme court found an abuse of discretion because the plaintiffs offered extraneous facts in the questionnaires as substantive evidence, not just as a basis for the experts' opinions. *Id.*

But *Gacke* does little to advance Dr. Kruger's position. The problem there was not a lack of foundation. In contrast to Dr. Lewis, the doctors in Gacke's case testified the questionnaires contained the type of information relied on by experts in their field. *Id.* The court's concern was "the wholesale admission of the questionnaires" which "addressed matters that went far beyond the documentation of odors and breathing problems upon which the experts relied." *Id.*

Franzen points out the district court here did not admit the survey responses into evidence. While true, that difference from *Gacke* does not help Franzen. The problem with Dr. Lewis's standard-of-care testimony arose further upstream. She did not testify the surveys contained the type of information relied on by dentists or oral surgeons. *See Kelly*, 558 N.W.2d at 722 (finding court erred in admitting memoranda at trial without the required foundation). Because Franzen did not lay a proper foundation under rule 5.703, we conclude the district court abused its discretion in allowing Dr. Lewis to share the survey results with the jury, even if the responses she received were not admitted into evidence.

Our conclusion is not an indictment of all survey evidence offered to reinforce an expert's confidence in his or her opinion under rule 5.703.[11] We

---

[11] "Our rules of evidence are patterned after the federal rules, and we give considerable weight to their rationale and the cases interpreting them." *Brunner*, 480 N.W.2d at 35. The Advisory Committee's Note to Federal Rule of Evidence 703 addresses survey evidence, explaining the rule "offers a more satisfactory basis for ruling upon the admissibility of public opinion poll evidence. Attention is directed to the validity of the techniques employed rather than to relatively fruitless inquiries whether hearsay is involved." Fed. R. Evid. 703 advisory committee's note.

recognize the view of some commentators that fortification of an expert's standard-of-care opinion is not only acceptable but would be a desirable reform of malpractice litigation if parties used proper survey methods. *See* Tim Cramm, Arthur J. Hartz, Michael D. Green, *Ascertaining Customary Care in Malpractice Cases: Asking Those Who Know*, 37 Wake Forest L. Rev. 699, 721 (2002).

These authors—who are lawyers and doctors—suggest, "[w]hen medical expert witnesses testify about customary care, they frequently either provide their own normative judgments about what practice is reasonable or appropriate, or they testify to the way they would have treated the plaintiff." *Id.* The authors believe "surveys of the relevant physician population would provide more acute, well-grounded evidence of the care provided by physicians." *Id.* The authors assert, "Rule 703 has become the avenue of choice for permitting the introduction of survey evidence." *Id.* "If the survey methodology is sound and the techniques employed are valid, then a solid argument can be made that it would be completely reasonable for a physician to rely upon these surveys in the course of determining what the customary care of the patient is and whether the defendant physician satisfied that customary care." *Id.* at 748.[12]

---

[12] Cramm, Hartz, and Green identified eight factors that federal courts consider in examining the methodology of a survey:

> (1) the respondents were part of the appropriate universe; (2) the respondent sample was representative of the whole; (3) the survey itself was fair and correct; (4) the survey was conducted by recognized experts; (5) the survey data were accurately gathered and reported; (6) the survey design satisfied objective standards of procedure and statistics; (7) the attorneys in the case did not participate in conducting the survey; and (8) the people conducting the survey had no knowledge that it was going to be used for litigation purposes.

*Id.* at 756 n.182.

But here, Franzen offered no evidence to show Dr. Lewis's survey methodology was sound. Even if Dr. Lewis had used sound polling methods and testified to those, she still would have needed to credibly convey that experts in her field would reasonably rely on such survey results. Without proper foundation and without any attention to the validity of her polling techniques, the expert's discussion of the survey responses was impermissible under rule 5.703.

Dr. Kruger further asserts the hearsay evidence improperly influenced the jury to his prejudice. We agree. The parties clashed over the standard of care for protective measures during the tooth extraction. Dr. Kruger called two experts who disagreed with Dr. Lewis's opinion. Dr. Steve Karbacka, a West Des Moines dentist, opined Dr. Kruger did not need to use a bite block during Franzen's procedure. Dr. Karbacka also testified dentists rarely use gauze screens for tooth extractions with adult patients. Likewise, retired Iowa dentist James Erusha testified neither a bite block nor a gauze throat screen was required during the tooth extraction in question. Because the standard of care was hotly contested, Dr. Lewis's survey evidence likely motivated the jurors to return a verdict finding Dr. Kruger negligent.

Franzen's counsel highlighted that testimony in closing argument:

> Dr. Lewis had 30 plus responses that before you anesthetize or put the Novocain in, you use a bite block and/or throat pack and/or some type of gauze or shielding material so this does not happen. And the University of Iowa was one of those respondents, right here in Iowa, where they get their continuing education.

The plaintiff's reliance on the substance of the survey responses, particularly the response from the Iowa College of Dentistry, signals their importance to his case. We find admission of the survey results was prejudicial because they were not

merely cumulative of Dr. Lewis's opinion.[13] *See Gacke*, 684 N.W.2d at 183. The survey results allowed the plaintiff to expose the jurors to expert opinions from non-testifying witnesses, unavailable for cross examination, without establishing the necessary foundation under rule 5.703.

The district court erroneously admitted prejudicial hearsay evidence. This error compels us to reverse the judgment entered against Dr. Kruger and remand for retrial.

**REVERSED AND REMANDED.**

---

[13] To counter the assertion of prejudice, Franzen argues Dr. Kruger should have requested a limiting instruction. If the district court had properly admitted the hearsay, Dr. Kruger could have asked for an instruction to clarify the survey results could not be considered for the truth of the matter asserted. *See Brunner*, 480 N.W.2d at 37. Because the court allowed the survey results into evidence without proper foundation, over Dr. Kruger's objections, Dr. Kruger preserved error without seeking a limiting instruction.