CITY OF DUBUQUE, Iowa, Appellee,

v.

Walt FANCHER, Appellant.

No. 97–654.

Supreme Court of Iowa.

March 24, 1999.

Russel A. Neuwoehner of Lange & Neuwoehner, Dubuque, for appellant.

Barry A. Lindahl, Corporation Counsel, Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and CADY, JJ.

CADY, Justice.

This is an appeal from a district court order for the disposition of nearly three hundred neglected rabbits removed from the home of Walt Fancher. The district court ordered the rabbits destroyed by euthanasia, and required Fancher to pay the expenses of the removal, care, and destruction of the rabbits. We affirm the district court on our review.

## I. Background Facts and Proceedings.

The animal warden for the City of Dubuque was called to the home of Walt Fancher by police officers after they discovered numerous dead and neglected rabbits in cages in and around the home. The police had entered the premises to execute a search warrant for certain business records as part of an investigation unrelated to the maintenance of the rabbits. Upon her arrival at the premises, the warden observed hundreds of rabbits in unclean cages. Many of the cages had no food or water. A foul odor permeated the home. The rabbits had matted fur, abscesses, and some ears had been chewed off. The warden attempted to consult with a veterinarian by telephone, but the doctor was unavailable to speak with her. She then removed seven of the rabbits from the home and transported them to the veterinarian for examination. The veterinarian found the rabbits suffered from serious health problems. The warden and veterinarian agreed all the rabbits should be removed and placed at the Dubuque Humane Society. The warden, with assistance from other city employees, removed the remaining 284 rabbits from the Fancher property. The city police officers did not assist in the removal.

The City subsequently filed a petition for the disposition of the rabbits. At the hearing, the City presented testimony the rabbits were highly infected with bacteria and parasites, and the entire population needed to be euthanized. Even the veterinarian called to testify at the hearing by Fancher agreed the entire colony of rabbits should be euthanized.

Fancher, however, claimed the rabbits had been removed from his property in violation of the governing statute, as well as his constitutional rights against unreasonable search and seizure. The trial court rejected Fancher's request to address this issue prior to the hearing.

Following the hearing, the district court found the rabbits were neglected. It also determined they were properly seized by the City, and ordered the rabbits destroyed by a humane method. The costs of the removal, care, and destruction were assessed to Fancher.

On appeal Fancher claims the district court erred in failing to decide the legality of the seizure prior to the dispositional hearing, and failing to dismiss the petition for lack of jurisdiction based upon the failure to comply with the statutory rescue procedure. He also maintains the district court erred by admitting evidence at the hearing unrelated to the definition of animal neglect and admitting a letter from the Department of Public Health into evidence.

## II. Standard of Review.

Because this action was tried at law, our review is on error. Iowa R.App. P. 4; *Plymouth Farmers Mut. Ins. Ass'n v. Armour*, 584 N.W.2d 289, 291 (Iowa 1998). We generally review evidentiary rulings for an abuse of discretion. *Williams v. Hedican*, 561 N.W.2d 817, 822 (Iowa 1997). Hearsay rulings, however, are reviewed for correction of errors of law. *State v. Hallum*, 585 N.W.2d 249, 253–54 (Iowa 1998).

## III. Procedural Claims.

We first consider the procedural and jurisdictional issues raised by Fancher. He claims the district court erred in failing to address his statutory and constitutional challenges to the seizure of the rabbits prior to the hearing. He argues this issue was required to be addressed prior to the dispositional hearing because an illegal seizure would deprive the city of its authority to dispose of the animals and deprive the court of its jurisdiction to hear the case.

Our legislature has made animal abuse and neglect a crime in Iowa. *See* Iowa Code §§ 717B.2, 717B.3 (1997); *Johnson County v. Kriz*, 582 N.W.2d 759, 760 (Iowa 1998). Additionally, the law permits a law enforcement officer to "rescue" a neglected animal from public or private property. *Id.* § 717B.5(1). Generally, the law allows a law enforcement officer who has lawfully entered onto property to rescue a neglected animal from the property after consulting with a veterinarian. *Id.* Once an animal is rescued, the city or county is required to maintain and care for it or contract with a person to provide such care. *Id.*

The city or county, as well as the person caring for or owning the animal, is also authorized to petition the district court to determine the disposition of a neglected animal. *Id.* § 717B.4(1). The action is a civil proceeding, and is unrelated to any criminal proceeding that may result from the neglect. *Id.* The disposition that may result from the hearing includes destruction of the animal by a humane method. *Id.* § 717B.4(4). Additionally, the district court may order the owner of the neglected animal to pay the "expenses incurred in maintaining the neglected animal rescued pursuant to section 717B.5, and reasonable attorney fees and expenses related to the investigation of the case." *Id.* § 717B.4(3).

The language of the statute does not make the rescue of a neglected animal a prerequisite to the disposition of a neglected animal. Instead, the district court is authorized to "order the disposition of an animal neglected as provided in section 717B.3." *Id.* § 717B.4(1). Iowa Code section 717B.3 defines animal neglect. Thus, any animal which falls within the statutory definition of neglect, whether rescued under the specific statutory procedures of section 717B.5, seized by other authority, or left in the owner's control, may be the subject of a petition for disposition. It is the neglect of the animal, not the nature of any seizure, which gives rise to the disposition.

Accordingly, we reject Fancher's claim that the district court had no authority to hear the petition for disposition of the

rabbits without first considering his challenge to the seizure of the animals. If the authority of the court to order the disposition of a neglected animal does not hinge upon the rescue procedure under section 717B.5, it also does not hinge upon compliance with the rescue procedure. *See In re Property Seized on Jan. 31, 1983*, 362 N.W.2d 565, 569 (Iowa 1985) (illegal seizure of property does not exempt property from forfeiture). Similarly, we reject the claim that the district court lacked jurisdiction to order disposition. The statute gives the district court jurisdiction to hear petitions for disposition without regard to the manner of seizure.

██ We conclude a challenge to the propriety of the seizure of neglected animals does not impact the authority of the city to file a petition for disposition or the jurisdiction of the district court to hear and decide the petition. This conclusion makes it unnecessary for us to decide the merits of Fancher's claim that the city failed to comply with section 717B.5 in removing the rabbits.[1]

### IV. Evidentiary Claims.

██ Fancher claims the trial court erred by admitting evidence relating to sanitation and cleanliness because these issues went beyond the statutory definition of animal neglect. We find this evidence was relevant to the appropriate disposition of the rabbits. Such conditions may have contributed to the permanent distress of the animals, thereby requiring euthanasia. *See* Iowa Code § 717B.4(1), (4). Thus, we find the trial court did not abuse its discretion by admitting this evidence.

Fancher also claims the district court erred by admitting a letter authored by an environmental epidemiologist for the Department of Public Health. He claims the information and opinions contained in the letter constituted inadmissible hearsay because the exhibit contained information conveyed to him by the animal warden. The City main-

tains the letter was non-hearsay because it was offered only to help explain the basis for the trial testimony of the City's veterinarian that the rabbits should be destroyed.

██ We recognize experts may base their opinions on hearsay. *See* Iowa R. Evid. 703. However, this rule does not automatically render hearsay admissible. *See C.S.I. Chem. Sales, Inc. v. Mapco Gas Prods.*, 557 N.W.2d 528, 531 (Iowa App.1996). Moreover, it does not permit the use of the opinion of a nontestifying expert to corroborate the opinion of the testifying expert. *Id.*

██ Although the foundational requirements of Rule 703 were not met, the letter was merely cumulative of evidence properly admitted at trial. The animal warden testified at trial to the factual information contained in the letter, and Fancher's own expert witness agreed with the epidemiologist's opinion that the entire colony of rabbits should be euthanized. We are therefore unable to find Fancher was prejudiced by the admission of the letter. *See State v. McCurry*, 544 N.W.2d 444, 448 (Iowa 1996).

We have considered all of Fancher's claims. We affirm the district court.

**AFFIRMED.**

---

1. Fancher did not claim the court exceeded its dispositional authority by ordering the payment of removal and maintenance expenses, only that it lacked authority to hold a dispositional hearing. We observe the dispositional statute specifies the court may order payment of expenses and fees for neglected animals "rescued pursuant to section 717B.5." *See* Iowa Code § 717B.4(3). Fancher did not raise the issue of whether this language only authorizes the court to order payment for expenses when the animals were properly rescued under section 717B.5. Therefore, we do not reach the issue.