**IN THE COURT OF APPEALS OF IOWA**

No. 20-1671
Filed October 20, 2021

**IN THE MATTER OF PROPERTY SEIZED FOR FORFEITURE FROM BARBARA J. KAVARS,**

**BARBARA J. KAVARS,**
        Appellant.
_____

        Appeal from the Iowa District Court for Worth County, Colleen Weiland, Judge.

        Barbara Kavars appeals the denial of her applications for return of property.
**AFFIRMED.**

        Michael G. Byrne of Winston & Byrne, P.C., Mason City, for appellant.

        Kelsey A. Beenken, Forest City, for appellee Worth County.

        Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

Barbara Kavars filed applications for the return of 154 dogs and two cats[1] taken from her property on November 12, 2018. The district court denied the applications, finding Kavars was not the owner of the animals as a result of a relinquishment agreement and a prior court ruling. Kavars appeals, and we affirm.

**I. Background Facts and Proceedings.**

For about a year the Worth County sheriff's department and animal welfare agencies interacted with Kavars based on concerns about her inability to properly care for the many dogs on her premises. In early November 2018, a deputy sheriff applied for search warrants for Kavars's property, asserting in both applications there was probable cause to believe evidence of animal neglect would be found. Attachments to the applications described many visits by law enforcement to Kavars's property and the conditions in which the animals were kept. On November 12, 2018, two search warrants were issued for Kavars's property based on a showing of probable cause for animal neglect.[2] The warrants authorized the removal of all dogs found on the premises. The warrant also provided:

> You are further authorized to take the following actions with the assistance of the [American Society for the Prevention of Cruelty to Animals (ASPCA)] and any appropriate designees:
> A. Videotape and photograph the exterior and interior of the targeted premises;
> B. Process the target premises for fingerprints and to analyze, test and in any way scientifically process the target premises, any animals found therein and all items seized for any and all forensic evidence;

---

[1] Four cats were initially seized. However, two cats died and their remains were returned to Kavars.

[2] Animal neglect is defined in Iowa Code section 717B.3 (2018); however, the warrant misidentified the section as 717B.2 (animal abuse).

C. Conduct thorough and complete examinations, testing, treatment and/or necropsies that an Iowa licensed veterinarian should deem necessary for the thorough and complete diagnosis and treatment of any dog seized pursuant to this warrant;

D. Provide housing and care for any dogs seized pursuant to this warrant.

ASPCA representative Kyle Held and a team of responders, including veterinarians and animal handlers, accompanied the deputy to Kavars's property.[3] More than 150 dogs were found to be living in overcrowded, unhealthy conditions outside Kavars's home without access to food or water. Three dogs and four cats were located inside the home in unsanitary and unhealthy surroundings. Kavars spoke with Held, grudgingly acknowledged her inability to care for the dogs, and eventually signed a relinquishment agreement, surrendering "all but 9 K9 and 4 cats." The relinquishment agreement states:

> Owner hereby represents and warrants that Owner is the legal owner of the animals described above and/or in the annexed Animal Inventory List (the "Animal(s)"), which is incorporated and made a part of this agreement. Owner acknowledges that by signing this agreement, Owner hereby relinquishes all claims of ownership to the Animal(s). Neither Owner nor any representative(s) acting on Owner's behalf may assert any present and/or future rights, claims. suits or otherwise against the recipient named above [Worth County Sheriff's Office] (the "Recipient") with respect to the Animal(s). Owner understands that, once Owner surrenders them, the Recipient will not return the Animal(s) to Owner under any

---

[3] In anticipation of the execution of the search warrants, the sheriff's office and the ASPCA entered into a written agreement of cooperation, which states, in part:

> The ASPCA acknowledges and agrees that the Seized Animals and any evidence collected pursuant to the Warrants (together, the "Evidence") are considered by Law Enforcement to be evidence in a criminal case. The Parties acknowledge and agree that once disposition of the animals has been resolved *either through a Court Order of forfeiture or voluntary surrender by the Owner*(s), the ASPCA may transport and house the Seized Animals outside of the judicial district in which they were seized and/or in which the criminal case is being prosecuted.

(Emphasis added.)

circumstances, and any decisions concerning the disposition of the Animal(s) shall be made by the Recipient at its sole discretion.

Owner acknowledges that Owner is entering this relinquishment agreement voluntarily, of Owner's own free will and that there have been no inducements or promises made to Owner in order to secure this agreement.

The nine dogs and four cats that were not relinquished were seized by the sheriff's department and removed from the property.

*Chapter 717B proceeding.* On November 21, 2018, pursuant to Iowa Code section 717B.4, the county filed a petition for threatened status, custody, and disposition of the thirteen seized animals. The case was tried before a Worth County magistrate on December 3 and 4. After posttrial briefs were filed, the magistrate granted the petition and ordered the sheriff to dispose of the seized animals in any manner deemed appropriate. The ruling was upheld on appeal to the district court:

> Upon review of the record, the court concludes that the animals were neglected. The court finds that the magistrate's findings of fact as set forth in the January 7, 2019, order accurately describe the conditions at Kavars'[s] property and accurately summarize the evidence presented at trial. The court also agrees that Kavars'[s] evidence was not credible. The evidence presented by the county proved neglectful conditions that Kavars either minimized or denied. Although she was concerned for the animals and wanted to take care of the animals, she was unable to do so. Her testimony reflected either a misunderstanding of the conditions for the animals or her testimony was not truthful. Despite the evidence presented, Kavars still contended at trial that her animals were in good health.
>
> . . . .
>
> Here, the evidence demonstrates, with proof by a preponderance of the evidence, that the animals were neglected. The animals were malnourished, as shown by many dogs being underweight and by multiple observations that there was not sufficient food. The animals were not provided with sufficient water as shown by multiple observations of empty water dishes or frozen water dishes. The shelters for the dogs and cats were inadequate. The enclosures for the dogs were too small. The dogs were allowed

to fight or mate without supervision. Inside Kavars'[s] house, the conditions were not safe for any of the animals. Finally, the animals were deprived of necessary sustenance such that many of the animals experienced unjustified pain, distress, or suffering. In addition to being malnourished and dehydrated, some of the animals had untreated wounds, dental care problems, and signs of living in an environment with excessive ammonia.

Our supreme court denied an application for discretionary review.

*Animal neglect proceeding.* On March 22, 2019, Worth County charged Kavars with seventeen counts of animal neglect. In that proceeding, Kavars filed a motion to suppress, claiming the warrants were flawed in a number of respects. The district court extensively discussed the "very muddy waters" created by the parties and the processes used, and stated it was

necessary to analyze whether: (1) the search warrant was validly obtained and executed; (2) whether Kavars'[s] relinquishment of her dogs and the evidence obtained while the deputy and the ASPCA representatives were on her premises was obtained improperly, and (3) what evidence, if any, collected from the defendant or her property should be excluded at trial.

The court found:

The search warrant issued on November 9, 2018[,] was valid for entry onto the Kavars premises for the purpose for which it was sought. That is, to search for and to seize evidence of the crime of animal neglect. To the extent that the person executing the warrant, that is, Deputy Grunhovd, may have observed instances of animal neglect while doing so, he will be allowed to testify to those observations. In addition, the State may introduce evidence seized in the search to the extent not excluded below.
    The warrant is not valid for purposes for which it was not sought. That is, to rescue endangered animals.[4] With respect to

---

[4] Iowa Code section 717B.5 provides:
    A local authority may provide for the rescue of an animal as follows:
        (1) The rescue must be made by a law enforcement officer having cause to believe that the animal is a threatened animal after consulting with a veterinarian licensed pursuant to chapter 169. The law enforcement officer may rescue the animal by entering on public or private property, as provided in this subsection. The officer may

animals seized during the execution of the search warrant, namely, nine dogs and four cats listed on the return inventory, evidence regarding the neglect of those animals shall not be introduced at trial.

The court in the criminal case addressed Kavars's claims that the ASPCA was acting on behalf of the state and thus was "bound by the Fourth and Fifth Amendments not to conduct unreasonable searches and seizures nor to compel Kavars's[s] self-incrimination." The court provided the background leading to the day the warrant was executed:

> Over a period of several months, animal welfare agencies and the state inspector visited [Kavars's] premises and suggested she correct the problems they observed. At various times these agencies suggested that Kavars reduce the number of dogs in her care. They also suggested that she cease breeding dogs and that she have her dogs neutered. There were suggestions that Kavars needed to do a better job of separating her dogs so that breeding would not occur.
>     Notes retained by the Animal Rescue League of Iowa reveal that sometime in early 2018 Kavars agreed to surrender [thirty-eight] other dogs so that they could be placed for adoption. This surrender appears to have been done voluntarily without the issuance of a warrant. Those notes reflect also that Kavars agreed then that she had more dogs than she could handle and that the animal welfare agency had plans to remove dogs at an increased pace because breeding continued and the population continued to increase. It would have been no surprise to Kavars that when the agencies continued to visit her and saw that the conditions did not improve, they would want to take action to remove the dogs. . . . Kavars should have been well aware that she going to have to drastically reduce the population of dogs or risk having them removed.
>     Although Kavars may not have been pleased with the removal of the dogs from her premises, her actions suggest that she nevertheless consented, except with regard to the nine dogs and four cats that were taken under the ostensible authority of the court. The Relinquishment Agreement for Animals recites that "Owner acknowledges that Owner is entering this relinquishment agreement

enter onto property of a person to rescue the animal if the officer obtains a search warrant issued by a court, or enters onto the premises in a manner consistent with the laws of this state and the United States, including Article I, section 8, of the Constitution of the State of Iowa, or the fourth amendment to the Constitution of the United States.

voluntarily, of Owner's own free will and that there have been no inducements or promises made to Owner in order to secure this agreement."

Recorded conversations between Kavars and ASPCA agent Kyle Held indicate that when faced with the possibility of having her dogs seized pursuant to a warrant, she opted to voluntarily surrender the dogs. These conversations reflect negotiations between Kavars and Held not so much as to whether dogs would be surrendered but rather as to the number of dogs that Kavars would be able to exclude from her consent. In those negotiations Kavars effectively argued her position. Through a persistent and protracted series of pleas, promises, cajoling, coaxing, capitulation and other persuasive efforts, Kavars was able to improve her position with respect to the number of dogs she could retain.

. . . .

The court finds that the surrender of the dogs under the relinquishment agreement was done voluntarily and that the actions of the ASPCA and the other animal welfare agencies involved did not constitute state action and were not done while Kavars was in custody. Therefore, any evidence derived from the inspection, veterinary examinations and relinquishment of the animals, except those taken under the ostensible authority of the search warrant listed above, shall not be suppressed and may be introduced at trial.

A jury trial followed. The district court dismissed three counts, and Kavars was convicted of fourteen counts of animal neglect. On February 20, 2020, the district court acting in an appellate capacity affirmed the ruling on the motion to suppress and upheld Kavars's convictions. Kavars's sentences were suspended, and she was placed on probation for a period not to exceed two years. As part of her probation, Kavars was ordered to obtain a mental-health evaluation and complete all recommended treatment. She was prohibited from owning or breeding dogs and limited to ownership of one neutered cat during the term of her probation. An application for discretionary review was denied by our supreme court.

*Application for return of property.* On March 20, 2020, Kavars filed applications for the return of all the property seized in November 2018. After a

trial, the district court denied her applications, concluding Iowa Code section 809.5 provides that seized property is to be returned to the owner if the property meets certain conditions set out in that section. The court held, "Kavars is not the owner of the animals at issue, and is accordingly not entitled to their 'return.'" Kavars appeals.

## II. Scope and Standard of Review.

The parties do not agree on our standard of review. Kavars claims our review is de novo. The County asserts statutory interpretation and forfeiture proceedings are both reviewed for the correction of errors. Although not technically a forfeiture proceeding under chapter 809, we believe the County has the better argument. *See In re Prop. Seized from Li*, 911 N.W.2d 423, 426 (Iowa 2018) (noting statutory construction and forfeiture proceedings are reviewed for correction of errors at law). "We examine the evidence in the light most favorable to the district court judgment and construe the district court's findings liberally to support its decision." *In re Prop. Seized from Chiodo*, 555 N.W.2d 412, 414 (Iowa 1996).

## III. Discussion.

Kavars contends the court erred in "failing to apply chapter 809 to the requirements on return of seized property taken under chapter 808." Kavars asserts this court conducted "a complete review of the scheme and structure of chapters 808 and 809 as they apply to a claim under section 809.3" in *In re 1972 Euclid Avenue*, No. 07-0552, 2008 WL 2039310 (Iowa Ct. App. May 14, 2008). This is a bit of an overstatement.

In that case we did state, "[W]e lay out the statutory scheme under which actions for the return of seized property are governed. Iowa Code section 809.3 (2005) sets forth the requirements for an application for the return of seized property." *1972 Euclid*, 2008 WL 2039310, at *1. The question we addressed was "DeBower's claim that the 'district court erred by improperly considering an interest asserted by the State on behalf of a person who did not make a claim to possession and thus had no standing.'" *Id.* at *2. We agreed the State did not allege a property interest in the seized items and so did not have standing. *Id.* at *3. The case is not on point because Kavars is asserting her own purported interest in seized property.

The relevant statutory provisions include Iowa Code sections 809.3 and 809.5 (2018). Section 809.3 states:

> (1) Any person claiming a right to immediate possession of seized property may make application for its return in the office of the clerk of court for the county in which the property was seized.
> (2) The application for the return of seized property shall state the specific item or items sought, the nature of the claimant's interest in the property, and the grounds upon which the claimant seeks to have the property immediately returned. Mere ownership is insufficient as grounds for immediate return. The written application shall be specific and the claimant shall be limited at the judicial hearing to proof of the grounds set out in the application for immediate return. The fact that the property is inadmissible as evidence or that it may be suppressed is not grounds for its return. If no specific grounds are set out in the application for return, or the grounds set out are insufficient as a matter of law, the court may enter judgment on the pleadings without further hearing.

Section 809.5 provides:

> (1) Seized property shall be returned to the owner if the property is no longer required as evidence or the property has been photographed and the photograph will be used as evidence in lieu of the property, if the property is no longer required for use in an

investigation, if the owner's possession is not prohibited by law, and if a forfeiture claim has not been filed on behalf of the state.

. . . .

(2) Upon the filing of a claim and following hearing by the court, property which has been seized shall be returned to the person who demonstrates a right to possession, unless one or more of the following is true:

(a) The possession of the property by the claimant is prohibited by law.

(b) There is a forfeiture notice on file and not disposed of in favor of the claimant prior to or in the same hearing.

(c) The state has demonstrated that the evidence is needed in a criminal investigation or prosecution.

(3) The court shall, subject to any unresolved forfeiture hearing, make orders appropriate to the final disposition of the property including, but not limited to, the destruction of contraband once it is no longer needed in an investigation or prosecution.

At trial, Kavars argued for the return of the property:

[T]he property was removed from Ms. Kavars'[s] possession by warrant. The warrant itself requires that the property be seized only for purposes of safekeeping for use in an evidentiary purpose. And the requirement of 809 is that the property be returned to the owner upon completion of the search warrant unless it is subject to forfeiture, which in this case all these criminal matters were simple misdemeanors and nothing would have been forfeitable under the criminal code, or whether they're illegal per se and the animals are not illegal per se.

THE COURT: Well, I agree that the (a), (b), and (c) under [Iowa Code section 809.5] subsection two don't apply here and [the County] can't show that, but I don't understand how you get past that first paragraph [of section 809.5]; that upon the filing of a claim and following hearing by the court, property which has been seized shall be returned to the person who demonstrates a right to possession, and I don't see Ms. Kavars'[s] right to possession.

[PLAINTIFF'S COUNSEL]: Ms. Kavars'[s] right to possession, Your Honor, would be that the animals were taken from her.

THE COURT: Well, she relinquished a number of them and the others were disposed by that 717B proceeding; right?

[PLAINTIFF'S COUNSEL]: 717B.4, Your Honor, is the [*City of*] *Dubuque v. Fancher*[, 590 N.W.2d 493 (Iowa 1999)] case where the court found that in a 717B.4 civil proceeding, the search warrant is immaterial because it is not applicable to those matters. It is still an independent restriction on the sheriff's office release of animals to any entity other than Barb Kavars under the independent statute of 809.

THE COURT: I am not following that at all. We've been disposed of in the 717B; right? They are not her animals.

[COUNTY'S ATTORNEY]: Correct.

[PLAINTIFF'S COUNSEL]: Under 717B, the court would have that authority to order disposition, but these animals—

THE COURT: And the court did order that disposition, didn't it?

[PLAINTIFF'S COUNSEL]: The court simply ordered they be delivered to the sheriff's office for appropriate disposition. The court made no specific disposition of the animals themselves.

[COUNTY'S ATTORNEY]: That's not entirely correct, Your Honor. The court essentially ordered disposition to Worth County correctly—correct, to dispose in any manner Worth County saw fit. And it specifically included in the order the ability to give those animals to rescue agencies so that they could adopted out, which is what happened in this case—or in that case.

The district court determined that Kavars did not have any interest in the seized property. The court rejected Kavars's adamant assertion the relinquishment agreement was involuntary and should be set aside:

Just because she did not want to do it does not mean that her agreement was involuntary. Kavars understood the circumstances, was able to consider and negotiate. She felt rushed, but was actually given a generous amount of time to consider her options—especially in the face of the years of problems leading up to that moment. Kavars faced two bad options from her point of view: have all of the animals seized, or relinquish many and preserve the possibility of retaining a few. Having to choose between two unpalatable options does not render her decision involuntary.

The relinquishment agreement executed by Kavars terminated her ownership of 145 dogs. She is not the owner and is not entitled to their return under Iowa Code Chapter 809.

"[V]oluntariness is a 'question of fact to be determined from the totality of all the circumstances.'" *State v. Lane*, 726 N.W.2d 371, 378 (Iowa 2007) (citation omitted). The district court considered relevant factors and found Kavars entered into the agreement voluntarily. *See State v. Pettijohn*, 899 N.W.2d 1, 32 (Iowa 2017) (listing factors to consideration in voluntariness). *Cf. State v. Ahern*, 227 N.W.2d 164, 166 (Iowa 1975) (noting even a person under arrest can give free and

voluntary consent to a search depending upon the totality of the circumstances). Substantial evidence supports the court's finding and, consequently, the court did not err in concluding Kavars had no interest in the 145 animals relinquished.

With respect to the dogs and cats not subject to the relinquishment agreement, the district found, "Those animals were later determined to be 'threatened animals' in a [section] 717B.4 proceeding" and were disposed of by court order. The court concluded Kavars "is not the owner and is not entitled to their return under Iowa Code Chapter 809."

We find no legal error in the court's interpretation of the statute and no misapplication of law to fact. *See Fancher*, 590 N.W.2d at 495 ("[T]he district court is authorized to 'order the disposition of an animal neglected as provided in section 717B.3.' [Iowa Code] § 717B.4(1). Iowa Code section 717B.3 defines animal neglect. Thus, any animal which falls within the statutory definition of neglect, *whether* rescued under the specific statutory procedures of section 717B.5, *seized by other authority*, or left in the owner's control, may be the subject of a petition for disposition." (emphasis added)). We affirm.

**AFFIRMED.**